ZACK CHEEK BUILDERS, INC. and
Zack Cheek, Individually,
Defendants-Petitioners,

v.

Alan D. McLEOD and Margaret Elaine
McLeod, Plaintiffs-Respondents.

Supreme Court of Tennessee.

March 17, 1980.

Rehearing Denied May 5, 1980.

Gail P. Pigg, John E. Brandon, Watkins, McGugin, McNeilly & Rowan, Nashville, for petitioners.

Charles E. Griffith III, Susan Emery McGannon, Bartholomew, Cleary, Stokes & Mudter, P. A., Nashville, for respondents.

## OPINION

MARTHA CRAIG DAUGHTREY, Special Justice.

This appeal involved interpretation of Rule 15.02 of the Tennessee Rules of Civil Procedure, which permits the amendment of pleadings at any time, if necessary to achieve conformity with an unpleaded issue tried by implied consent.

Defendant Zack Cheek, as agent for defendant Zack Cheek Builders, Inc., sold the plaintiffs a home and lot on sloping terrain on January 25, 1975. During the next year, heavy rainfall precipitated at least two substantial shifts of soil or landslides behind the house, causing considerable expense to the plaintiffs for repair work. They brought suit on multiple theories, including negligence, strict liability and implied warranty. The current controversy is related to a fourth cause of action which charges the defendants with responsibility for the damage "by reason of misrepresentation, by concealment, of the dangerous and defective condition of the property about which they knew or should have known, which concealment was a proximate cause of Plaintiffs' losses."

There is no disagreement that the case was tried on the newly-emergent theory of negligent misrepresentation, rather than fraudulent misrepresentation or misrepresentation by concealment. See Restatement (Second) of Torts §§ 552 et seq. (1965). The affirmative defense of contributory negligence, id. at § 552A, had not been pleaded in answer. But at the end of all the proof, the trial judge directed a verdict for the defendants as to all theories except negligent misrepresentation and commented:

"I think there's also a question of contributory negligence as to whether the plaintiffs should have been aware of it, or should have made an effort once they found out there was mud in the back yard to go [sic] a much greater examination than they did."

The trial judge subsequently charged the jury as to contributory negligence, and the jury ultimately returned a verdict finding both parties liable for negligence "and no money to be compensated." Accordingly, judgment for the defendants was entered on October 26, 1977.

Following the plaintiffs' timely motion for a new trial, the defendants moved on December 19, 1977, to amend the pleadings

to add the affirmative defense of contributory negligence to their answer, pursuant to Rule 15.02. This motion was granted by the trial judge.

The Court of Appeals reversed and remanded for new trial, but the basis for the court's order is not entirely clear from a reading of the opinion. This fact had led to a unique situation in which both sides have joined in urging this court to review the case for purposes of clarification.

There is at least the implication in the Court of Appeals' decision that the court was concerned about the operation of Rule 15.02 in this case. The Rule reads in pertinent part:

> Amendments to conform to the evidence. —When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The plaintiffs emphasize the time factor as it relates to this issue. In essence, they argue that the trial judge erred in permitting the amendment of the answer under circumstances in which the defendant's motion and the ruling thereon both occurred more than 30 days after entry of judgment. However, the Rule clearly states that amendment may occur "at any time, even after judgment." There is some indication in the authorities that the amendment may occur only while the case is "in" the trial court. *See, e. g.* 6 Wright & Miller, Federal Practice and Procedure § 1494, at 474 (1971). But the commentators also emphasize that there is no realistic time limitation and that the amendment can even be made on appeal. 3 Moore, *Federal Practice* ¶ 15.13[2] at 168 (2d ed. 1978); Wright & Miller, *supra*, § 1494 at 476–478. See also

*Mason v. Hunter*, 534 F.2d 822, 825 (8th Cir. 1976) ("if necessary, an amendment can even be made on appeal").

Indeed, it is noted in both of the federal procedure treatises cited above that the Rule itself abrogates the time factor by providing that "failure so to amend does not affect the result of the trial of these issues." Because of this provision, "the timing of the motion to conform is of little moment." Wright & Miller, *supra*, § 1494 at 475. Moreover,

> . . . Rule 15(b) does not require that a conforming amendment be made and there is no penalty for failing to do so. The rule clearly states that the absence of a formal amendment or a request for leave to amend 'does not affect the result of the trial' of those issues actually litigated. *Id.*, § 1493 at 460–61.

See also Moore, *supra*, ¶ 15.13[2] at 168–170, noting that "[i]n effect . . . the parties may, by express consent, or by the introduction of evidence without objection, amend the pleadings at will."

Thus it is clear that Rule 15.02 seeks to place substance over form, and the real question before us is not whether the amendment was timely made, but whether or not the parties actually tried the issue delineated by the amendment. In short, the ultimate inquiry is whether there was implied consent from all parties in this case to try the issue of negligent misrepresentation, with the concomitant defense of contributory negligence.

■ Generally speaking, trial by implied consent will be found where the party opposed to the amendment knew or should reasonably have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby. A succinct statement of this rule appears in *Browning Debenture Holders' Committee v. Dasa Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977), where it is said that:

> In a motion under rule 15(b) to amend the complaint to conform to the proof,

the most important question is whether the new issues were tried by the parties' express or implied consent and whether the defendant 'would be prejudiced by the implied amendment, i. e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.

See also *Saalfrank v. O'Daniel*, 533 F.2d 325, 330 (6th Cir. 1976). The determination of whether there was implied consent rests in the discretion of the trial judge, whose determination can be reversed only upon a finding of abuse. *Laffey v. Northwest Airlines Inc.*, 567 F.2d 429, 478, fn. 370 (D.C. Cir. 1976).

Because of proof problems at trial, the commentators warn that:

Implied consent . . . is much more difficult to establish (than express consent) and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Thus, consent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend himself produced evidence bearing on the new issue. (Parenthetical insert added.) Wright & Miller, *supra*, § 1493 at 462–63.

The warning in this instance proves relevant, for application of the rule to the facts before us is not easy. However, our review of the record indicates that evidence bearing on the issue of negligent misrepresentation and contributory negligence was introduced at trial by both parties. For example, the plaintiffs call as witnesses Mr. and Mrs. Ipser, their next door neighbors, who testified that a serious and obvious problem existed in the plaintiffs' backyard both before and after the date of the contract. Mr. and Mrs. Ipser described the state of the backyard as looking "like an earthquake" and said that the backyard was laced by erosive ruts or ditches one and a half to two feet deep—so deep that Mrs. Ipser's dog completely disappeared from view in these ruts when running across the area. Mrs. Ipser said that in February, 1975, they had friends visiting from out of town and that the visitors "commented on the condition of the property." She said the whole yard was covered with mud.

Despite this testimony, plaintiff Alan McLeod testified that he had never taken the time to talk across the backyard and that he had never noticed these ditches. Mr. McLeod testified further on cross-examination:

Q: Did anyone at any time prevent your going out to the property between the date of the contract and the date of the closing or at any time and making whatever visual inspection you wanted to make?

A: No, sir.

Q: You could have gone out and walked over the land and seen these one and a half to two foot ditches Mrs. Ipser told us about if you had taken the time to do it?

A: I could have gone out and walked over the property if I had taken the time to do it.

Mr. McLeod did later testify on cross-examination that he had seen the mud and washing problem in January of 1975. On re-direct, the plaintiffs delved further into the issue of Mr. McLeod's knowledge of terrain problems prior to buying the house.

The McLeods' geological expert agreed on cross-examination that "anybody, including the plaintiffs," could have recognized the existence of previous landslides by a visual inspection of the backyard. On direct examination, Mrs. McLeod was asked to testify about her prior knowledge of landslides on the property, and on cross-examination, she testified in response to a question about whether she had noticed the ditches:

"I'm not saying they weren't there. My husband just doesn't care much about

outside matters and might not notice them, anyway. I would not notice them." She later testified that "[i]f I had gone up on the hill, I would have seen them, yes, but I did not."

As noted previously, the trial judge determined that a contributory negligence charge was needed, evincing his conclusion that this issue had been tried by the parties. Based on the record before us, we cannot say that he abused his discretion in making this decision. As the court observed in *Laffey v. Northwest Airlines, supra* at 478, fn. 370, "[h]e is in a far better position than we to determine the understanding under which the parties proceeded."

Rule 15.02 codifies the common sense notion that if, as happened here, the parties actually tried the issues of negligent misrepresentation and contributory negligence, the content of the pleadings and a retrial to tread old ground become meaningless. We hold the trial court did not abuse its discretion in permitting amendment to the pleadings following judgment. Indeed, under a proper interpretation of Rule 15.02, that action was largely unnecessary, except as a housekeeping measure designed to insure the integrity and clarity of the record on appeal.

We therefore reverse the judgment of the Court of Appeals, reinstate the judgment of the trial court based on the verdict of the jury, and dismiss the plaintiffs' suit in this case.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

The plaintiff-respondents have filed a petition to rehear in this case, contending that the court's opinion overlooks two matters: (1) trial judge's error in failing to give a proper jury instruction on the law of contributory negligence, and (2) the plaintiffs' insistence that this court should adopt and apply an implied warranty of fitness for a particular purpose to the realty in question here.

These matters were not overlooked by the court, but were considered inapplicable to this case. As to the first issue, the record fails to indicate that the jury charge was incorrect, nor do we find that the matter was properly brought before this court. As to the second issue, the plaintiffs concede that Tennessee is not among those jurisdictions which recognize and apply an implied warranty to the sale of realty. But even if we were to reverse our previous position on this question, an implied warranty of habitability would not be applicable to this case, because the disputed issue involved a problem with the land itself, and not with the dwelling situated on it. Since there is no allegation in the record that the house was defective in any way, or unfit for habitation, there would be no liability on the part of the builder-vendor under an implied warranty theory.

As the defendants point out in their brief, Tennessee law recognizes that a vendor "is not required to exercise care to disclose dangerous conditions or to have an ordinarily retentive memory as to their existence, *unless* the condition is one which . . . an inspection by the vendee would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe [the] vendee will not realize it." *Belote v. Memphis Development Co.*, 208 Tenn. 434, 346 S.W.2d 441, 443 (1961). It was just this sort of question of fact that was considered by the jury in this case and resolved in the defendants' favor. As we pointed out in our opinion, there is sufficient evidence in the record to support the jury's decision.

The petition to rehear is denied.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.