IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

October 1, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| FAYE LOUISE TAYLOR CHADWELL | ) | CAMPBELL COUNTY |
| | ) | 03A01-9601-GS-00007 |
| Plaintiff-Appellee | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. BILLY JOE WHITE, |
| | ) | CHANCELLOR |
| | ) | (Sitting by Interchange) |
| ALBERT CHADWELL and | ) | |
| CONSOLIDATION COAL COMPANY[1] | ) | |
| | ) | |
| Defendants-Appellants | ) | AFFIRMED AND REMANDED |

JERROLD L. BECKER and LUCINDA M. ALBISTON OF KNOXVILLE FOR APPELLANTS

JOHNNY V. DUNAWAY OF LaFOLLETTE OF KNOXVILLE FOR APPELLEE

O P I N I O N

Goddard, P.J.

In this post-divorce proceeding, the Chancellor found that certain assets owned by Albert Chadwell at the time of the parties' divorce were marital assets and that his former wife,

---

[1] Consolidation Coal Company was made a party in the petition now on appeal to enjoin the transfer of any funds or assets held for the benefit of Mr. Chadwell and to require a full accounting of such funds.

Faye Louise Taylor Chadwell, was entitled to a judgment against him of $94,320 which included interest from the date of the divorce. The Chancellor also impressed a lien against certain real estate originally owned by Mr. Chadwell, who later purported to transfer an interest to his present wife. Both the real estate and the home Mr. Chadwell erected thereon were paid for in part with the assets in dispute in this appeal.

The principal question to be decided in this appeal is whether an order entered in a previous proceeding between the parties found that Mrs. Chadwell was not entitled to these specific funds, thus barring her claim under the theory or res judicata.

The parties were married on October 8, 1966. Throughout their 18-year marriage, Mr. Chadwell was employed by Consolidation Coal Company. By 1984, Mr. Chadwell had three accounts through his employment at Consolidation Coal Company: an Employee Retirement of Consol Inc. (retirement plan) which became vested June 1, 1983; a Conoco Employees Stock Ownership Plan (CESOP) composed entirely of DuPont stock; and an Investment Plan for Salaried Employees of Consol (investment plan).

The marriage was terminated by a Final Decree of Divorce entered on June 11, 1984. The Final Decree provided in part:

> 5. That Faye Louise Taylor Chadwell is awarded the 1974 Grand Prix automobile and all other personal property acquired by the parties, except the stock accumulated by Albert Chadwell at his place of employment, which stock is awarded 50% to Albert Chadwell and 50% to Faye Louise Taylor Chadwell, with each party to be responsible for his respective share of income tax due at such time as any taxes are due on the said respective party's stock.

The stock mentioned in the Decree was not further identified or defined by the Decree. There was no valuation of the stock at the time of the divorce. However, Ms. Chadwell averred in her original complaint for divorce that the stock was worth approximately $50,000. There was no distribution of the stock or the proceeds thereof to Ms. Chadwell.

A hearing was conducted on June 4, 1986, in the General Sessions Court for Campbell County. The Court found that Mr. Chadwell "owns an interest in a retirement investment account or stock account in his employer," and that the account had drawn a minimal of 10 percent interest since the entry of the Final Decree. The Court ordered him to provide verification of the amounts in the investment accounts, to determine the present value of the accounts, and to provide Ms. Chadwell with access to the records pertaining to the accounts.

On February 19, 1988, the Court attempted to determine Ms. Chadwell's interest in the retirement plan under the Final Decree. The Court found that "[t]he retirement plan funds which are at issue in this action are not mentioned per se in the decree. . . . Given the distinctive nature and large amount of

3

the retirement plan in 1984 it would seem logical that it would be addressed in its own terms rather than lumped in with the term stock." The Chancellor stated that the issue of Ms. Chadwell's interest in the retirement account could and should have been litigated in 1984 at which time the parties had knowledge of it but did not include it in a division of their marital property. Thus, the Chancellor held that under the Final Decree, Ms. Chadwell had no interest in the retirement account. Ms. Chadwell did not appeal the Court's findings.

In the following years, Mr. Chadwell failed to provide verification of the stock or investment accounts and he failed to make any distributions to Ms. Chadwell as ordered by the court in 1984 and 1986. Ms. Chadwell filed a petition for contempt on November 23, 1993, seeking valuation of the her interest in Mr. Chadwell's holdings with his employer and a judgment for her one-half interest. The Court held that Mr. Chadwell was in contempt for failing to provide verification of the accounts and for failing to distribute 50 percent of the value of the accounts as he was ordered to do by the Court in 1984 and 1986. The Court also made a finding that the value of the accounts was no less than $84,927.99, one half of which was owed to Ms. Chadwell.

On March 9, 1995, Ms. Chadwell filed an amended petition for contempt adding Mr. Chadwell's current wife, Donna Marie Chadwell. Ms. Chadwell complained that Mr. Chadwell and his present wife had used Ms. Chadwell's portion of the stock

4

funds to purchase real property and construct a house. The petition alleged that Mr. Chadwell had attempted to avoid Ms. Chadwell's claims as a judgment creditor by conveying the real property and the house to his current wife. Mr. Chadwell responded to the petition by an answer in the form of a general denial alleging no affirmative defenses.

At trial on July 12, 1995, Mr. Chadwell's retirement plan, the investment plan and the CESOP were identified through the testimony of the supervisor of qualified benefits at Consolidation Coal Company. It was established that all three accounts were in existence at the time of the Final Decree in 1984. The retirement plan became vested as of 1983 and Mr. Chadwell would be able to draw benefits from it in 1998. Mr. Chadwell's investment plan was made up entirely of stock until 1981 at which time it was converted into a deposit savings account. The plan allowed for up to three partial withdrawals per year and a total withdrawal at any time. The CESOP was composed entirely of DuPont stock and could not be withdrawn until Mr. Chadwell terminated his employment.

Mr. Chadwell terminated his employment with Consolidation Coal Company on December 31, 1990. He liquidated his CESOP account on November 19, 1992, for the sum of $14,648.37. He made no distribution to Ms. Chadwell after the liquidation. There was evidence submitted that Mr. Chadwell withdrew a total of $187,044.16 from the investment plan after

the Final Decree. From this account, Mr. Chadwell distributed $1,245 to Ms. Chadwell in February of 1986.

There was evidence at trial that Ms. Chadwell was a homemaker throughout the marriage and did not deal with the accounts in any way. Ms. Chadwell testified that her husband always referred to the accounts generically as "stock." Also, there was testimony that Mr. Chadwell admitted in 1984 that Ms. Chadwell's share of the accounts he held with his employer was $26,000 and that he persuaded her to leave the stock in the accounts on the representation the stock would earn more interest if it was left with Mr. Chadwell. Ms. Chadwell chose not to liquidate or withdraw her share at that time.

Mr. Chadwell asserted at trial that he was only required to share with Ms. Chadwell the holdings in the CESOP which, at the time of the Final Decree, he stated was worth $2,000. Mr. Chadwell asserted that he paid Ms. Chadwell all funds due to her from the CESOP in 1986 by check. Ms. Chadwell testified that the check was from the investment plan and was for their children. Mr. Chadwell admitted during cross-examination that he altered the check after it was returned to him so that it would erroneously indicate that it came from the CESOP rather than the investment account.

Mr. Chadwell testified that the investment plan was part of his retirement plan. However, there was testimony from

6

the supervisor of qualified benefits at Consolidation Coal Company that the investment plan and the retirement plan were two separate and distinct accounts.

The Trial Court found that Ms. Chadwell had a one-half interest in the CESOP and in the investment plan. The Court found that litigation of the retirement account was barred by res judicata arising from the 1986 hearing. The Trial Court awarded Ms. Chadwell a judgment of $94,320 representing her share of the CESOP and the investment plan and imposed a lien upon Mr. Chadwell's real property to secure payment of the judgment. After trial, the Chancellor set aside the deed from Mr. Chadwell to his current wife as a fraudulent conveyance.

In this appeal, Mr. Chadwell has raised several issues, all of which are based on the doctrine of res judicata. However, Ms. Chadwell asserts that because Mr. Chadwell failed to affirmatively plead the defense of res judicata his access to this defense has been waived. Mr. Chadwell's only responsive pleading was in the form of a general denial and he failed to state any affirmative defenses.

Rule 8.3 of the Tennessee Rules of Civil Procedure requires that a party affirmatively set forth facts relied upon to establish an affirmative defense in a responsive pleading. The rule explicitly mentions res judicata as such an affirmative defense. Rule 12.08 of the Tennessee Rules of Civil Procedure

7

provides that defenses not properly raised are waived. Thus, failure to raise the defense of <u>res judicata</u> in a responsive pleading will act as a waiver of a party's ability to raise that defense.

However, Rule 15.02 of the Tennessee Rules of Civil Procedure states "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The Rule states that the pleadings may be amended at any time so as to conform to the evidence presented at trial but failure to amend the pleadings will not affect the result of the trial of the issues. An issue is tried by implied consent when the party opposing the issue knew or should reasonably have known of the evidence relating to the new issue, did not object to the evidence, and was not prejudiced by the inclusion of the evidence. <u>Zack Cheek Builders, Inc. v. McLeod</u>, 597 S.W.2d 888 (Tenn. 1980). See also <u>Chisholm v. Bohannon</u>, 558 S.W.2d 446 (Tenn. App. 1977).

Although Mr. Chadwell did not specifically plead <u>res judicata</u> as required by Rule 8.3, the issue was raised through testimony at trial. There was no objection made on behalf of Ms. Chadwell that the evidence was beyond the scope of the pleadings. In his opinion, the Chancellor made a specific ruling as to the issue of <u>res judicata</u>. Finally, the issue was argued on behalf

8

of Mr. Chadwell in a motion for new trial.[2] Thus, we find that the issue was tried by implied consent and Mr. Chadwell has not waived his right to assert this defense.

Mr. Chadwell asserts that, based on a res judicata theory, the Trial Court should have been precluded from litigating the issue of whether Ms. Chadwell had rights in the CESOP and the investment plan. He argues that the issues were previously litigated in 1984 and 1988.

The defense of res judicata will be available if the party asserting the defense can show that the prior judgment was by a court of competent jurisdiction, that the same parties were involved in both suits, that the same cause of action was involved in both suits, and that the underlying judgment was on the merits. Lee v. Hall, 790 S.W.2d 293 (Tenn. App. 1990). A prior judgment will preclude only matters that were at issue in the prior judgment. "[T]he adjudication, to be conclusive, should be upon the very point brought directly in issue by the pleadings." White v. White, 876 S.W.2d 837 (Tenn. 1994).

As stated above, the Court in 1984 entered a Final Decree setting forth the rights and duties of the parties. As already noted, the Final Decree generically stated that Ms. Chadwell was to receive 50 percent of the "stock" that Mr.

_____

[2] We express no opinion as to whether the issue could have been raised in a motion for new trial. Rather, we merely recognize that the issue was before the Court both during the trial stage and post-trial.

9

Chadwell had in Consolidation Coal Company. There was evidence at trial that Mr. Chadwell referred to all investment and retirement accounts with his employer as "stock." The definition and extent of that term were not at issue and were not litigated. It seems axiomatic that the issuance of a divorce decree will not be res judicata as to an issue that arises as to the interpretation of the decree itself. Mr. Chadwell argues that the issue could have and should have been litigated when the decree was issued. But, it seems clear that there was no issue until the interpretation of the term "stock" became disputed.

At issue in the 1988 litigation was, as stated by the Chancellor in that proceeding, "whether Faye Chadwell was entitled to a full or partial interest or share in a retirement plan of Albert Chadwell." The issue of Ms. Chadwell's interest in the CESOP and the investment plan were not addressed. The Trial Court in that action held that the issue of Ms. Chadwell's interest in the retirement account should have been litigated in 1984 and he declined to read the Final Decree broadly enough to include the retirement plan. The Trial Court in the present case applied res judicata with respect to the retirement account although the Chancellor expressed doubts as to the soundness of the 1986 decision. Nevertheless, it is clear that the issue of the extent of Ms. Chadwell's interest in the CESOP and the investment plan were not raised or decided in the 1988 proceeding.

Also, the litigation in 1988 arose from a petition filed by Ms. Chadwell seeking to compel Mr. Chadwell to provide verification of the value of the "stock" which he had failed to do in violation of a court order issued in 1984 and 1986. All subsequent action between the parties charged Mr. Chadwell with contempt for failure to provide verification of his holdings with Consolidation Coal Company and for failure to make distributions from those holdings to Ms. Chadwell. With the exception of seeking to compel Mr. Chadwell to comply with the prior court orders, none of the issues presented in the 1995 litigation had been raised in the prior litigation, by the pleadings or otherwise. Thus, we hold that the prior litigation did not bar Ms. Chadwell from seeking a court to declare the extent of her interest in the CESOP and the investment plan.

Next, Mr. Chadwell asserts that the Chancellor erred in finding that the investment plan was separate and distinct from the retirement plan. Mr. Chadwell seeks to include the investment plan within the retirement plan because the Court below gave res judicata effect to the issue of the retirement plan.

The findings of fact of the trial court comes to this Court accompanied by a presumption of correctness which must be honored unless the "preponderance of the evidence is otherwise." Rule 13(d), Tennessee Rules of Appellate Procedure; Union Carbide Corp. v. Huddleston, 854 S.W.2d 87 (Tenn. 1993). We find that the

11

Chancellor had ample evidence upon which to base a finding that the plans were separate. There was testimony from the supervisor of qualified benefits of Consolidation Coal Company and an accountant stating that Mr. Chadwell had an interest in the retirement plan, the investment plan, and the CESOP. Also, although Mr. Chadwell testified that he only had an interest in the CESOP and the retirement plan his credibility had been called into question when he admitted to altering a check to Ms. Chadwell that was paid with funds from the investment account. The Chancellor made a specific post-trial ruling that Mr. Chadwell had engaged in fraud and perjury in relation to this litigation. Thus, the findings of the Chancellor did not preponderate against the evidence. Consequently, we affirm the conclusion of the Chancellor on this issue.

Mr. Chadwell's final issue asserts that the Trial Court erred in finding that Ms. Chadwell had a one-half interest in all accounts belonging to Mr. Chadwell at the time of the divorce. This argument is without merit because the Chancellor did not hold that Ms. Chadwell had a one-half interest in all of Mr. Chadwell's accounts. Rather, the Chancellor expressly held that Ms. Chadwell had a one-half interest in the CESOP and the investment plan, but no interest in the retirement plan.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings, if any, as may be necessary and collection of the

12

judgment and costs below.    Costs of appeal are adjudged against Mr. Chadwell and his surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Clifford E. Sanders, Sp.J.

13