IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 12, 2003

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES
## v. G.C.

**Appeal from the Juvenile Court for Hamilton County**
**Nos. 179520, 179521, 179522     Suzanne Bailey, Judge**

**FILED JANUARY 29, 2004**

**No. E2003-01532-COA-R3-CV**

---

The trial court terminated the parental rights of G.C. ("Mother") with respect to her minor children, I.A.J.C. (DOB: April 3, 1999), M.L.K.L.II (DOB: July 31, 2000), and J.E.L. (DOB: July 22, 2002). Mother appeals, arguing that the evidence preponderates against the trial court's finding, by clear and convincing evidence, that statutory grounds exist for termination. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

John A. Shoaf, Chattanooga, Tennessee, for the appellant, G.C.

Paul G. Summers, Attorney General and Reporter, and P. Robin Dixon, Jr., Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee Department of Children's Services.

**OPINION**

I.

On December 18, 2001, the Tennessee Department of Children's Services ("DCS") filed a petition for temporary custody of I.A.J.C. and M.L.K.L.II. The petition alleges that I.A.J.C. and M.L.K.L.II were dependent and neglected children "because they have both been burned repeatedly by what appears to be a curling iron on their hands, necks and faces." The petition goes on to state that Mother had an extensive criminal record and that the State had previously taken custody of two of her other children, one of whom had been burned on a heater. Upon the filing of the petition, the juvenile court entered an order placing temporary care and custody of the children with DCS.

On the day of his birth, July 22, 2002, DCS filed a petition for temporary custody of J.E.L. The petition contained the following allegations:

> [J.E.L.] . . . is a dependent and neglected child within the meaning of the law because [Mother] is currently incarcerated and further, because [Mother] was found by [the trial court] on May 14, 2002, to have severely abused two siblings of the subject child, [I.A.J.C.] and [M.L.K.L.II]. [Those two children] have been in the State's custody since December 18, 2001. [Mother] has a total of 5 other children, none of whom are in her custody because of [her] severely abusive behavior towards them. [Mother] has an extensive history of violent behavior towards children, an extensive criminal history, and an extensive history of cocaine abuse and prostitution. . . . The legal father of [J.E.L.], [M.L.Sr.] has maintained an ongoing relationship with [Mother], both before and since her incarceration. [M.L.Sr.] currently resides in the paternal grandmother's home, where the children, [I.A.J.C.] and [M.L.K.L.II] are placed. [M.L.Sr.] does not have his own home and is not self-supporting due to enormous financial debt and child support arrearages for children born from a previous marriage. The Paternal Grandmother will not agree to care for [J.E.L.], until parentage testing determines that [M.L.Sr.] is the biological father. There are no other known suitable relatives at this time, ready and willing to care for [J.E.L.].

On the same date the petition was filed, the juvenile court ordered that J.E.L. be placed in the temporary custody of DCS.

On November 15, 2002, DCS filed a petition to terminate the parental rights of Mother, M.L.Sr.[1], and E.M.W.[2] A bench trial was held in the instant case on May 23, 2003; Mother was incarcerated at the time of trial on aggravated child abuse charges stemming from burning the children with a curling iron. At the conclusion of the trial, the court terminated the parental rights of Mother, finding, by clear and convincing evidence, that grounds for terminating Mother's parental rights existed and that termination was in the best interest of the children.

---

[1] Before the trial began on the termination of parental rights, DCS moved to voluntarily dismiss the termination petition with respect to M.L.Sr. The trial court granted the motion.

[2] E.M.W. is the putative father of I.A.J.C. He did not contest the termination of his parental rights with respect to I.A.J.C., and the juvenile court terminated those rights effective February 28, 2003. E.M.W. did not appeal the termination.

## II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

## III.

The law is well-settled that "parents have a fundamental right to the care, custody, and control of their children." ***In re Drinnon***, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing ***Stanley v. Illinois***, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). However, this right is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. ***Santosky v. Kramer***, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

The issues raised in the pleadings, the evidence presented at trial, and the trial court's findings implicate the following statutory provisions:

*Tenn. Code Ann. § 36-1-113 (Supp. 2003)*

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination [of] parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

* * *

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

* * *

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

* * *

*Tenn. Code Ann. § 37-2-403 (Supp. 2003)*

(a)(1) Within thirty (30) days of the date of foster care placement, an agency shall prepare a plan for each child in its foster care. . . .

* * *

(2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency. . . .

* * *

(C) Substantial noncompliance by the parent with the statement of responsibilities provides grounds for the termination of parental rights, notwithstanding other statutory provisions for termination of parental rights, . . . .

IV.

Mother raises three issues for our consideration: (1) whether the evidence supports the trial court's finding that Mother failed to substantially comply with the permanency plan; (2) whether the evidence supports a finding that termination of Mother's parental rights was justified pursuant to Tenn. Code Ann. § 37-1-147; and (3) whether the evidence supports the trial court's finding that DCS made reasonable efforts to reunify Mother with the child.

A.

The trial court found that Mother "failed to comply in a substantial manner with her foster care plan/permanency plan responsibilities." The plan required Mother to do the following: (1) undergo a psychological evaluation and follow through with any recommended treatment; (2) undergo a parenting assessment; (3) successfully complete parenting classes; (4) successfully complete anger management classes; (5) undergo an alcohol and drug assessment; (6) submit to random drug screenings; (7) maintain safe, stable housing for at least six consecutive months; (8) obtain and maintain legal employment for at least six consecutive months; (9) refrain from engaging

in any illegal activity; (10) voluntarily pay child support; and (11) cooperate with and maintain contact with DCS.

The trial court found, by clear and convincing evidence, that Mother failed to substantially comply with *any* of the aforementioned eleven obligations under the permanency plan. If ever there has been a clear case of substantial noncompliance with the plan, this is it. Mother's sole argument on appeal with respect to this issue is that she complied with the plan "to the extent that she was able and capable of doing so." However, Mother's utter failure to comply with any of the eleven responsibilities severely undercuts this argument. Accordingly, we find that the evidence does not preponderate against the trial court's findings with respect to the allegations that Mother failed to substantially comply with the permanency plan.

B.

Mother next contends that "there is no clear and convincing evidence that justifies a termination of [Mother's] parental rights pursuant to [Tenn. Code Ann. §] 37-1-147."[3] In support of this argument, Mother relies upon *State Dep't of Children's Servs. v. Defriece*, 937 S.W.2d 954 (Tenn. Ct. App. 1996). In *Defriece*, we held that "evidence of a *partial* improvement" in the mother's parenting abilities was influential in our decision to reverse the trial court's finding, by clear and convincing evidence, that grounds for terminating the mother's parental rights existed. *Id.* at 961 (emphasis in original). In the instant case, Mother asserts that her "many examples of partial improvement" should be enough to warrant a reversal of the trial court's decision.

We begin by noting that Tenn. Code Ann. § 37-1-147, which is the statute cited by Mother in support of her position, has no applicability to her argument. This statute pertains solely to the juvenile court's authority to adjudicate termination proceedings. As such, Mother's reliance on it is misplaced.

With respect to Mother's reliance on the *Defriece* case, we find that it is easily distinguishable from the facts in the instant case. In *Defriece*, there was evidence that the mother had failed to provide her child with a suitable home; that she had a problem with drugs and alcohol; that she was involved with several different men; and that she had demonstrated an utter lack of

---

[3]Tenn. Code Ann. § 37-1-147 (2001) provides as follows:

> (a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

> (b) Upon entering an order to terminate parental or guardian rights to a child, the court shall award guardianship or partial guardianship of the child as provided in the relevant provisions of title 36, chapter 1, part 1.

> (c) The effect of the court's order terminating parental or guardian rights shall be as provided in § 36-1-113.

stability in her life. *Id.* at 960. However, the record in the case also reflected that the mother had attended counseling sessions; completed parenting classes; and completed a vocational rehabilitation program. *Id.* In addition, there were no new allegations of drug and alcohol abuse; the mother had a new job and was working forty hours per week; she was involved in a stable relationship; and had a more stabilized home environment. *Id.* at 960-61. Based upon those partial improvements, we found that there was no clear and convincing evidence that *all* of the statutory factors had been satisfied which would justify termination of the mother's parental rights. *Id.* at 961.

Unlike the mother in *Defriece*, Mother in the instant case has shown no sign of even partial improvement. Indeed, the trial court found that Mother had failed to substantially comply with *any* of the eleven requirements under the permanency plan. Therefore, we find this issue to be without merit.

C.

Finally, Mother argues that the trial court erred in determining that DCS made "reasonable efforts to reunify the family as required by [Tenn. Code Ann. §] 37-1-166." However, having thoroughly reviewed the record in this case, we find no indication that this issue was raised in the trial court, neither in the pleadings nor in the course of the trial itself. The law is well-settled that issues not raised at trial may not be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Further, we are unable to construe the flavor of the trial testimony in such a way as would support the fact that this issue was tried by the implied consent of the parties. *See Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 890 (Tenn. 1980). Accordingly, we decline to address Mother's third issue.

V.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, G.C.

_____
CHARLES D. SUSANO, JR., JUDGE