IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 3, 2021 Session

## IN RE LAYTON W.

**Appeal from the Circuit Court for Franklin County**
**No. 2018-CV-207    Justin C. Angel, Judge**

_____

### No. M2021-00084-COA-R3-PT

_____

For a second time, a father appeals the termination of his parental rights to his child.  On remand after the first appeal, the trial court determined that there were two statutory grounds for terminating the father's parental rights and that termination was in the child's best interest.  We conclude that the record contains clear and convincing evidence to support one ground for termination: incarceration under a sentence of at least ten years when, at sentencing, the child was under the age of eight.  But, because the trial court's order lacks sufficient findings regarding the child's best interest, we vacate and remand.

**Tenn. R. App. P. 3 as of Right; Judgment of the Circuit Court Vacated and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J., M.S., and ANDY D. BENNETT, J., joined.

Mickey Hall, Winchester, Tennessee, for the appellant, Corey W.

Glen C. Moore, Winchester, Tennessee, for the appellees, Brittany D. and Josh D.

## OPINION

### I.

A child's stepfather, Josh D. ("Stepfather"), joined by his wife and the child's mother, Brittany D. ("Mother"), seeks to terminate the parental rights of the child's biological father, Corey W. ("Father").  That effort was initially successful.  But Father appealed the judgment terminating his parental rights to the child, Layton W.  *See In re Layton W.*, M2020-00197-COA-R3-PT, 2020 WL 5944053 (Tenn. Ct. App. Sept. 2, 2020).

In the prior appeal, this Court vacated the judgment and remanded with instructions. *Id.* at *4. We determined that the trial court erred in relying on party stipulations that statutory grounds existed to terminate Father's parental rights. *Id.* at *2. And the judgment otherwise lacked sufficient factual findings to support the statutory ground that Father had abandoned his child either by failing to support or by failing to visit him. *Id.* at *3. We also determined that the judgment did "not reflect that the trial court considered the appropriate best interest[] factors for termination of parental rights set forth in [Tennessee Code] section 36-1-113(i)." *Id.* at *4.

On remand, the trial court again terminated Father's parental rights. As for grounds, the court found that Father had been incarcerated when the petition to terminate parental rights was filed and "currently reside[d] in a state penitentiary . . . and [wa]s of limited financial means." And the court concluded that Stepfather and Mother did not prove by clear and convincing evidence that Father had abandoned Layton by failing to support him or by failing to visit him during the four-month period preceding Father's incarceration. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2018). Instead, the court concluded that Father:

> abandoned the minor child, pursuant to Tenn. Code Ann. § 36-1-113(g)(6), in that the Father ha[d] been confined in a correctional or detention facility, by order of a court, as a result of a criminal act, under a sentence of ten (10) or more years, and the child [wa]s under eight (8) years of age at the time the sentence [wa]s entered by the court.

The court also concluded that "Father engaged in conduct prior to incarceration that exhibited a wanton disregard for the welfare of the child, pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv)."

The best interest analysis was brief. The court found that it was in the child's best interest for Father's parental rights to be terminated because of the two grounds that served as the basis of termination. It concluded by "find[ing] by clear and convincing evidence that it is in the best interest of the minor child for the termination to be granted pursuant to Tenn. Code Ann. § 36-1-113(i)."

## II.

A parent has a fundamental right, based in both the federal and state constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250.

2

The government's interest in the welfare of a child justifies interference with a parent's constitutional rights in certain circumstances. *See* Tenn. Code Ann. § 36-1-113(g) (2021).

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). Parties seeking termination of parental rights must first prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). If one or more statutory grounds for termination are shown, they then must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *Id.* Evidence meeting the clear and convincing standard should leave "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). Such evidence produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

We review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

A.

In this appeal, as he did in his first appeal, Father argues only that the trial court erred in finding that it was in Layton's best interest to terminate his parental rights. Still, we must review the trial court's findings of fact and conclusions of law as to each ground for termination, even if the parent does not challenge such findings or conclusions. *See In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016) (requiring appellate courts to "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these

findings on appeal.").  So we begin with the statutory grounds the trial court relied on for terminating Father's parental rights.

The two grounds that the court relied on are not the same grounds that Stepfather and Mother alleged in their joint petition for adoption and termination of parental rights. In the first appeal, we noted that Stepfather and Mother sought to terminate Father's parental rights on two grounds: "Father had abandoned the Child because of his lengthy prison sentence and his failure to make child support payments." *In re Layton W.*, 2020 WL 5944053, at *1.  The joint petition included the following allegations:

> 8. The Defendant, . . . has completely abandoned his child as he is currently incarcerated for a time to be served of at least eight years.  The Defendant has been incarcerated since November, 2017 without even having contact through telephone service pursuant to the meaning of the law, specifically Tenn. Code Ann. § 36-1-102.

> 9. The Defendant, . . . is in arrearage of child support payments for this child and provides no financial and/or emotional support for the child.

Paragraph 8 conflates the grounds of abandonment under Tennessee Code Annotated § 36-1-113(g)(1) and of incarceration under a sentence of ten or more years under Tennessee Code Annotated § 36-1-113(g)(6).  The paragraph also misstates the required minimum sentence length by confusing it with the required age of the child at the time sentence is entered.  *See* Tenn. Code Ann. § 36-1-113(g)(6) (2018) (requiring the child to be under the age of 8 at the time the sentence is entered by the court).  Although "abandonment" is a single basis for termination of parental rights, abandonment is defined by statute in various ways.  *See id.* § 36-1-102(1)(A).  Paragraph 9 appears to refer to one of the types of statutorily defined abandonment that may serve as a basis for terminating parental rights. *See id.* § 36-1-102(1)(A)(iv), 1-113(g)(1).

Due process requires that a parent be notified of the alleged grounds for terminating his parental rights. *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *8 (Tenn. Ct. App. May 2, 2017).  Notice is "a fundamental component of due process." *In re W.B., IV*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005); *see also Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) ("Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (citation omitted)).  Pleadings should give the opposing party enough notice of the issues to prepare a defense. *Keisling*, 92 S.W.3d at 377.  But, even when a ground for termination is not pled, it may be tried by implied consent. *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 n.3 (Tenn. 2013); *In re Alysia S.*, 460 S.W.3d 536, 564 (Tenn. Ct. App. 2014).  A ground is tried by implied consent when a parent "knew or should reasonably have known of the evidence relating to the [unpled ground], did not

4

object to this evidence, and was not prejudiced thereby." *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 890 (Tenn. 1980).

Here, the ground of abandonment by an incarcerated parent by wanton disregard and the ground of parental incarceration for ten years or more were tried by implied consent. Not only did he fail to object to these grounds when proof was offered to support them, Father stipulated to both grounds as a basis for terminating his parental rights. *See In re Anari E.*, No. M2020-01051-COA-R3-PT, 2021 WL 1828500, at \*14 (Tenn. Ct. App. May 7, 2021) (finding implied consent when father did not object to petitioner's stated intent to proceed on unpled grounds); *In re Jeremiah N.*, 2017 WL 1655612, at \*10 (finding unpled ground was tried by implied consent when father had notice "from at least the opening statement"). The trial court also questioned Father under oath to confirm that he understood the grounds that were being asserted against him.

But the trial court's reliance on Father's stipulation to terminate his parental rights was improper. *In re Layton W.*, 2020 WL 5944053, at \*2. So we must review the court's findings following our remand to determine whether they amount to clear and convincing evidence of each ground for termination. *See C.J.H. v. A.K.G.*, No. M2001-01234-COA-R3-JV, 2002 WL 1827660, at \*8 (Tenn. Ct. App. Aug. 9, 2002) (recognizing that an uncontested "action to terminate parental rights . . . is subject to the same statutory requirements as one that is opposed: proof by clear and convincing evidence that grounds exist and that the child's best interests are served by the termination").

1.      Abandonment by an Incarcerated Parent by Wanton Disregard

At the time the joint petition to terminate was filed, one of the statutory definitions of "abandonment" covered parents who were incarcerated when the petition to terminate was filed and "contain[ed] two distinct tests for abandonment."[1] *In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005). One test examined pre-incarceration visitation and support; the other examined the pre-incarceration conduct of the parent. Under the second test, the incarcerated or formerly incarcerated parent was deemed to have abandoned a child if he "ha[d] engaged in conduct prior to incarceration that exhibit[ed] a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Here, Stepfather and Mother claimed Father's "history of incarceration, probation violations, in and out of the county jail and that sort of thing" constituted abandonment of Layton by wanton disregard. "Wanton disregard" is not a defined term, but "actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at \*3 (Tenn. Ct. App. June 9, 2015). The court may consider

---

[1] This definition of "abandonment" was revised in 2020. 2020 Tenn. Pub. Acts 43.

all evidence relevant to determining "whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. Among other things, "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68.

We conclude that Stepfather and Mother failed to meet their burden of proving that Father's pre-incarceration conduct exhibited wanton disregard for his child's welfare. The proof established that Father was incarcerated in November 2017. Layton was born in May 2015, so at the time of Father's arrest and incarceration Layton was two years old. To support the allegation of wanton disregard, Stepfather and Mother entered into evidence judgments from Father's various criminal activities and probation revocations. Father's criminal history is admittedly extensive. But there is a gap in his criminal behavior from April 2014 to his arrest in November 2017. We have previously held that a parent must be aware of his child's existence "at the time his actions constituting wanton disregard [we]re taken." *In re Anthony R.*, 2015 WL 3611244, at *3. Other than the acts leading to his current incarceration, Stepfather and Mother failed to show that any of Father's past criminal behavior occurred after he became aware that Mother was pregnant with Layton. *See id.* (recognizing "the statutory reference to 'the child' [in Tennessee Code Annotated § 36-1-102(1)(A)(iv)] can mean a child *in utero*").

2.      Incarceration for Ten Years When Child is Under Age Eight

The parental rights of a parent may also be terminated if "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court." Tenn. Code Ann. § 36-1-113(g)(6). Stepfather and Mother entered into evidence the judgments from Father's 2017 criminal activity. These judgments showed that Father was convicted of multiple crimes and sentenced to an effective sentence of twelve years. At the time Father was sentenced, Layton was almost three years old.

As this Court has made clear, the court "need not look beyond the judgment for conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey*, 182 S.W.3d at 876. Stepfather and Mother met their burden to establish that Father's parental rights were subject to termination based upon his sentence of twelve years.

C.

Because "[n]ot all parental misconduct is irredeemable," our parental termination "statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). So even if a statutory ground for termination is established by clear and convincing evidence, we must also determine whether termination of parental rights is in the child's best interests. Tennessee Code Annotated § 36-1-113(i) lists nine factors that courts must consider in making a best interest analysis. The "factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017). In reaching a decision, "the court must consider all of the statutory factors, as well as any other relevant proof any party offers." *Id.* at 682. The best interest analysis is a fact-intensive inquiry, and each case is unique. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004).

The parental termination statute requires "an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). Factual findings both "facilitate appellate review" and safeguard the important rights at stake in a termination proceeding. *In re Angela E.*, 303 S.W.3d at 251 (citation omitted). As our supreme court has observed, this Court "routinely remand[s] contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests." *Id.* at 251.

Here, the court concluded that it "is in the best interest of the minor child for the termination to be granted pursuant to Tenn. Code Ann. §36-1-113(i)." But the court's order includes no factual findings specific to its best interest determination. The order also makes no reference to the individual statutory best interest factors. So we cannot discern whether all of the statutory factors were considered. Under the circumstances, we find it necessary to once again remand the case to the trial court to make appropriate findings relative to the child's best interest. *See id.*at 255; *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 (Tenn. Ct. App. 2007).

**III.**

The record contains clear and convincing evidence to support terminating Father's parental rights on one ground. But we are unable to review the court's best interest determination because of a lack of specific findings of fact. So, we vacate the judgment terminating Father's parental rights. The case is remanded for specific findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k) and such other proceedings as are necessary and consistent with this opinion. Consistent with the requirements of Tennessee Code Annotated § 36-1-124(a) (2021), the trial court is directed to expedite the case on remand.

7

_____
s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE