# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER 11, 2004 Session

## MARY WARREN KESSER v. PETER HALE KESSER

**Direct Appeal from the Circuit Court for Shelby County**
**No. 147208 R.D.     Robert A. Lanier, Judge**

---

**No. W2003-02392-COA-R3-CV - Filed January 27, 2005**

---

Following their divorce in 1995, Wife filed a petition for contempt against Husband in 1997, alleging Husband failed to comply with certain provisions of the parties' marital dissolution agreement. Husband filed an answer and submitted his counter-petition for modification of his child support obligation based on changed circumstances. Wife, in turn, filed a motion asking the court to determine Husband's child support obligation following his receipt of a large severance payment from his previous employer. After holding a hearing on the parties' respective petitions, the trial court entered one order addressing the visitation of the parties' minor daughter and another order addressing the financial issues. In the order addressing the financial issues, the trial court increased Husband's base child support obligation, ordered Husband to pay additional child support in various amounts pursuant to the marital dissolution agreement, ordered Husband to pay additional amounts from improperly withheld taxes on the exercise of certain stock appreciation rights, and ordered Husband to pay Wife's attorney's fees. For the reasons set forth herein, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Allan J. Wade, Lori Hackleman Patterson, Memphis, TN, for Appellant

Darrell D. Blanton, Memphis, TN, for Appellee

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mary Warren Kesser ("Wife" or "Appellee") and Peter Hale Kesser ("Husband" or "Appellant") married in Smith County, Texas, on March 31, 1984. Husband and Wife have one child of the marriage, Mary Rose Crisp Kesser ("Daughter"), born on October 11, 1991. In January 1993, the family moved to Memphis, Tennessee, because Husband began a new job.

On October 20, 1994, Wife filed a Complaint for Divorce in the Circuit Court of Shelby County on the ground of irreconcilable differences. On July 24, 1999, Husband and Wife entered into a Marital Dissolution Agreement ("MDA") which provided, in relevant part, that Wife be awarded an absolute divorce on the ground of irreconcilable differences, the parties would share joint custody of Daughter with Wife being the primary residential parent, and Husband would have visitation with Daughter in excess of one-hundred days per year. The MDA also provided that Husband would pay child support as follows:

> 8. Child Support — Husband shall pay child support on or before the 10th day of each month as follows:
> a. <u>Basic.</u> Husband shall pay to Wife child support for Mary Rose in the amount of $2,000.00 per month beginning August 1, 1995, plus 21% of all bonus and other income as defined by the Tennessee Child Support Guidelines. Within fifteen (15) days after Husband receives any bonuses or other income as defined by the Tennessee Child Support Guidelines, Husband shall provide to Wife a recapitulation or breakdown of the gross and net amounts received along with a check from Husband for the child support based on the net amount received. Husband shall also provide to Wife proof of all income (as defined by the Tennessee Child Support Guidelines) for each year by April 1 of the following year. The requirement to pay 21% of all other income as defined by the Tennessee Child Support Guidelines shall begin with any income received after July 25, 1995 and shall not apply to the sale/liquidation of assets which are subject to division pursuant to T.C.A. § 36-4-121 and which assets are divided elsewhere in this Agreement. The parties acknowledge the amount of child support to be paid complies with the provisions of the Tennessee Child Support Guidelines. . . .

In addition, the MDA required Wife to pay Husband $350.00 per month to defray travel expenses incurred by Husband in exercising his visitation rights. The MDA also awarded Wife 70,564 in certain Stock Appreciation Rights ("SARs"), stating that:

13.    [T]he SARs cannot be placed in Wife's name. Husband shall exercise the SARs immediately upon their becoming exercisable, which is expected to be on or about August 8, 1995, unless otherwise instructed by Wife in writing in a timely manner. Husband shall pay to Wife an amount equal to the gross amount of each SAR payment less all taxes applicable thereto, including, without limitation, federal income tax, social security tax, and medicare tax.

On July 25, 1995, the trial court entered a Final Decree of Absolute Divorce incorporating by reference the provisions in the MDA.

Following the divorce, Wife and Daughter moved to Houston, Texas, while Husband remained in Memphis, Tennessee, where he worked for Arcadian Corporation, a Memphis based chemical company, as Vice President, General Counsel, and Secretary.

In January 1996, Wife, by letter, informed Husband that she wished Husband to exercise 64,952 SARs on her behalf in accordance with the MDA. On January 31, 1996, Husband exercised the SARs as requested. In doing so, Husband incurred gross income in the amount of $1,043,233.12. On February 22, 1996, Husband sent Wife a letter notifying her that he had exercised the SARs and attached a check payable to Wife in the amount of $584,210.55. The letter stated that, since his 1996 tax liability could not be ascertained as of that date, Husband would withhold 44% of the gross amount, or $459,022.57, to cover his estimated tax liability resulting from the transaction. The total amount withheld represented $307,232.15 withheld by Arcadian for federal income taxes and $151,790.42 withheld by Husband to cover additional tax liability he anticipated incurring. Wife objected to Husband's calculation of tax withholdings on the 1996 SARs income, and she demanded Husband pay her the $151,790.42 he withheld as well as interest on that amount.

The parties subsequently reached an agreement on the tax liability, whereby Husband agreed to deposit the excess tax withholdings above the estimated amount on his 1996 tax return into an interest bearing account. In addition, Husband agreed that, after filing his 1996 tax return, he would pay Wife "the amount of such excess, plus interest actually earned, less 30% of such interest for his applicable income, social security and medicare taxes." After filing his 1996 tax return, Husband incurred a total tax liability on the SARs exercise in the amount of $437,839.88.[1] In turn, Husband forwarded a check to Wife in the amount of $21,738.73; $21,182.69 of which represented the difference between the tax withholding on the SARs income ($459,022.57) and the actual tax liability incurred on the SARs income ($437,839.88), and $556.04 of which represented the net interest owed Wife.

_____

[1] This amount represented the difference between Husband's total tax liability for 1996 ($682,006.00) and his pro forma tax liability for 1996 excluding the SARs income ($259,293.00), as well as Medicare tax of $15,126.88 (the product of the statutory Medicare tax rate of 1.45% and the SARs income of $1,043,233.12).

In September 1996, Husband negotiated a severance contract with Arcadian Corporation. In March 1997, another company acquired Arcadian Corporation. Following the merger, the new company did not retain several employees, including Husband. From April 1997 until March 1998, Husband remained unemployed. In the interim, Wife sent Husband a letter in February 1997, requesting that he exercise the remaining 5,612 SARs. On February 18, 1997, Husband exercised the SARs and incurred gross income totaling $109,882.96. In turn, Husband remitted a check to Wife in the amount of $64,776.01 pursuant to the MDA, which amount represented the difference between the resulting gross income and a projected tax liability of $45,106.95.[2] (Exhibit 29). Pursuant to their prior agreement, Husband deposited the amount withheld into an interest bearing account pending the determination of his tax liability for 1997. After filing his 1997 income tax return, Husband notified Wife by letter dated September 3, 1998, that his actual tax liability on the SARs exercise amounted to $47,282.30.[3] As such, Husband requested Wife remit $2,175.35, representing the difference between the tax withheld ($45,106.95) and the actual tax liability on the SARs income ($47,282.30).

The present dispute began when Wife filed a Petition for Criminal and Civil Contempt against Husband in the Circuit Court of Shelby County on April 18, 1997, alleging the following: (1) Husband failed to fully disclose his income for 1995; (2) pursuant to the MDA, Husband owed additional child support for 1995; (3) Husband failed to provide Wife with information regarding additional income since 1995 as required by the MDA; and (4) Husband failed to provide Wife with proof of income for calendar year 1996 by April 1, 1996, as required by the MDA. Husband answered Wife's petition and filed a counter-petition seeking to modify the final divorce decree due to a material change in circumstances. Husband sought a reduction in his child support obligation by noting the following: (1) his recent job loss and reduction in income; (2) the fact that Daughter's visitation with him exceeded the amount of visitation time contemplated in the Tennessee Child Support Guidelines ("Guidelines"); (3) the April 1st deadline for providing proof of income should be changed to May 15th following the applicable tax year; and (4) Wife's payments of $350, as required by the MDA in order to defray travel expenses, have consistently been late, therefore, this amount should be deducted from Husband's monthly child support payment. Regarding the "additional child support" provision in the MDA, Husband's petition provided:

> 9. Petitioner is required under the MDA to pay additional child support to Respondent in an amount equal to 21% of his bonus and other income within 15 days after receipt of such income. The frequency of these additional child support payments has caused Petitioner to suffer a considerable administrative burden, especially

---

[2] Arcadian Corporation withheld $30,767.23 to cover federal income tax and $1,593.30 to cover federal Medicare tax. Husband withheld an additional $12,746.42 to cover additional anticipated federal income tax on the SARs exercise.

[3] This represented the difference between Husband's actual tax liability for 1997 ($257,311.00) and his pro forma tax liability for 1997 excluding the SARs income ($211,622.00), as well as Medicare tax at a statutory rate of 1.45% ($1,593.30) and the SARs income ($109,882.96).

in view of the size of Petitioner's other payments to Respondent. In addition, because there is no federal or state income tax withholding on Petitioner's non-employment income, it is literally impossible for Petitioner to accurately gauge his effective tax liability on such income until after his income tax returns for the year are prepared and filed. Therefore, Petitioner respectfully requests this Court change the frequency and timing of Petitioner's payment of additional child support from the current arrangement of multiple payments within 15 days after the receipt of each item to one payment on or before June 1 of the following year.

After filing his counter-petition, Husband stopped paying "additional child support."

In the interim, Husband acquired new employment and started a new family. When the company that acquired Arcadian Corporation refused to pay the severance package required under the contract, Husband instituted a lawsuit in federal court in May 1997. This litigation lasted from 1997 until 2001, resulting in Husband receiving, by wire transfer on December 31, 2001, $2,916,186.41.[4] From April 1998 until April 1999, Husband worked for Promus Hotel Corporation, headquartered in Memphis, as Vice President and Assistant General Counsel. From May 1999 to present, Husband has been a partner in the Memphis office of the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC. Following the divorce, Husband remarried, and he and his current wife adopted two children; one from China and one from Guatemala.

In anticipation of Husband's severance settlement, Wife, on October 26, 2001, filed a Motion to Determine Child Support Liability requesting an order setting forth Husband's child support obligation on the net amount received as calculated under the "additional child support" provision in the MDA. On September 19, 2002, Wife filed a Petition to Modify Final Decree of Divorce to Modify the Visitation Schedule with the trial court. Husband answered the petition on July 3, 2003, raising as an affirmative defense that the "additional child support" provision in the MDA is prohibited by the Guidelines and is not an enforceable contractual obligation, therefore, it should be abolished.

On July 9 and 10, 2003, the trial court, sitting without a jury, held a hearing to address Wife's contempt petition, both parties' petitions to modify the child support obligation, and Wife's petition to alter the visitation schedule. The trial court heard testimony from Husband, Wife, and Vincent DeGutis ("Mr. DeGutis"), Husband's accountant. The trial court also reviewed numerous exhibits submitted by the parties. In addition, the trial court also entertained the deposition testimony of Vallette G. Windham ("Ms. Windham"), Wife's accountant. Following the hearing, the trial court entered two separate orders; the first order, entered on August 11, 2003, addressed issues of

---

[4] The total amount awarded Husband equaled $5,091,545.45, but the net amount received by Husband represents deductions for taxes and litigation expenses. *See Campbell v. Potash Corp. of Saskatchewan, Inc.*, 238 F.3d 792 (6th Cir. 2001).

visitation, while the final judgment, entered on August 18, 2003, addressed the financial issues raised by the parties.

In the final judgment, the trial court separated the financial issues raised by the parties into three categories: (1) child support, (2) additional child support, and (3) SARs exercises and appropriate tax matters. The trial court also ordered Husband to pay Wife's attorney's fees in the amount of $43,000.00. Husband subsequently filed a motion to alter or amend the final judgment which the trial court denied. Husband filed a timely notice of appeal to this Court presenting for our review the following issues related to various rulings by the trial court contained within each category of the trial court's order:

I.      Whether the additional child support provision in the MDA should be abolished because it is unlawful and unworkable;

II.     Whether the trial court erred in applying the additional child support provision of the MDA to the severance payment;

III.    Whether the trial court erred in refusing to reduce Husband's income from the severance payment by that portion attributable to the salary he would have received had his employment not been terminated in 1997;

IV.     Whether the trial court erred in awarding Wife $90,715.41 in additional child support on "income" earned by Husband from 1995 through 1997;

V.      Whether the trial court erred in calculating future monthly child support by including a discretionary, non-recurring bonus of $40,000.00 in calculating income of $280,147.00 when the court also calculated additional child support on the bonus in the amount of $6,580.00;

VI.     Whether the trial court erred in calculating future monthly child support because Wife failed to meet her burden of proving that child support over $2,100.00 was necessary for the reasonable needs of the child;

VII.    Whether the trial court erred in refusing to reduce Husband's child support obligations based on the fact that Daughter spends more days per year with Husband than the number of days contemplated by the Guidelines;

VIII.   Whether the trial court erred in failing to fully reduce Husband's child support obligation based upon the fact he is legally obligated to support three additional children;

IX.     Whether the trial court erred in calculating future monthly child support;

X.      Whether the trial court erred in failing to award Husband amounts properly owed him by Wife;

XI.     Whether the trial court erred, both procedurally and substantively, in ruling that Husband owes $69,120.56 in improperly withheld taxes on the 1996 and 1997 SARs exercises;

XII.    Whether the trial court erred in awarding Husband $8,199.36 for 1996 and $735.10 for 1997 in interest on the amount he withheld on the 1996 and 1997 SARS income; and

XIII.   Whether the trial court erred in awarding $43,000.00 in attorney's fees to Wife and in denying Husband's claim for attorney's fees because fees should have been awarded based on the relative success of the parties.

For the reasons set forth herein, we affirm in part, reverse in part, and remand to the trial court for additional proceedings consistent with this opinion.

## II.
### STANDARD OF REVIEW

"[R]eview of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2003); *see also Wade v. Wade*, 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002). "With respect to legal issues, our review is conducted 'under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts.'" *Ellis v. Ellis*, No. E2003-01327-COA-R3-CV, 2004 Tenn. App. LEXIS 319, at *13 (Tenn. Ct. App. May 17, 2004) (quoting *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)); *see also Kendrick v. Shoemake*, 90 S.W.3d 566, 569–70 (Tenn. 2002). Additionally, when we undertake a review of a trial court's determination of child support, we employee the following standard of review:

> Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, 1988 Tenn. App. LEXIS 430, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed).

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

## III.
### LAW AND ANALYSIS

Each issue raised by Husband on appeal focuses on one of the three categories addressed in the trial court's final judgment. Accordingly, we will discuss the issues raised by husband as they relate to (1) the "additional child support" provision in the MDA, (2) the "base" child support obligation, and (3) issues related to the SARs exercises. In addition, we will discuss issues relating to attorney's fees in a separate section of this opinion.

*The "additional child support" provision in the MDA*

Regarding additional child support, the trial court ruled, in relevant part, as follows:

> Even though Mr. Kesser had requested the Court to modify the time of the Additional Child Support, he has refused to pay any Additional Child Support since 1996. One of Mr. Kesser's positions at trial is that the Additional Child Support provision should not apply to his severance package because it was not contemplated at the time of the Marital Dissolution Agreement, but he acknowledged that the Additional Child Support provision would apply to bonuses. Even so, in 1999, Mr. Kesser received a bonus of $31,304.00 and paid no additional child support. In 2001, Mr. Kesser received a bonus of $55,000.00 and paid no additional child support and in 2002, Mr. Kesser received a bonus of $40,000.00 and paid no additional child support.
>
> The severance package is expressly designated as income by the child support guidelines. It should be considered income in the year received. However, as it is far in excess of the $10,000.00 contemplated by the child support guidelines, the sums above the percentage applied to the net income above $10,000 should be placed in a Trust Fund for the benefit of the child. The Marital Dissolution Agreement already makes some provision for the college education of the child, so that the Trust should not be restricted to that purpose. The Trust should be for the use and benefit of the child until she reaches the age of twenty-five, at which time the remaining principal and interest should be distributed to her. In the meantime, the Trustee should pay, in the Trustee's discretion, to or for the benefit of the child, such sums as shall be reasonable and necessary. Mr. Kesser testified that the net sum which he received for his severance package, after litigation expenses and taxes was $1,478,813.00. It is upon that figure that calculations should be based.

The trial court went on to conclude that Husband's arguments seeking to set aside the "additional child support" provision in the MDA were without merit. The trial court also ordered Husband to pay additional child support as follows: $5,304.00 for the 1999 bonus plus interest accruing from January 2000, $8,652.00 for the 2001 bonus plus interest accruing from January 2002, $6,580.00 for the 2002 bonus plus interest accruing from January 2003, and $90,715.41, pursuant to the testimony

of Ms. Windham, for additional income earned from 1995 through 1999 plus interest accruing from January 2000.[5]

As his first issue, Husband argues that the "additional child support" provision in the MDA should be abolished, and his child support obligation should be calculated solely according to the Guidelines. We begin with Wife's implied assertion that Husband is estopped from raising this issue on appeal because his petition to modify his child support obligation did not request that the trial court abolish the provision, but he merely asked the trial court to require that additional child support payments be made only once a year.

As a general rule, "a judgment or decree which is beyond the fair scope of the pleadings is void." *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955) (citing *Lieberman, Loveman & Cohn v. Knight*, 283 S.W. 450, 452 (Tenn. 1925); *Terrell v. Terrell*, 241 S.W.2d 411 (Tenn. 1951)). The Tennessee Rules of Civil Procedure provide:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.* Provided, however, amendment after verdict so as to increase the amount sued for in the action shall not be permitted. If evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Tenn. R. Civ. P. 15.02 (2003) (emphasis added). "The policy underlying the rule seems to be that since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced." *Brown*, 281 S.W.2d at 497.

While Husband did not raise the issue of abolishing the "additional child support" provision in his petition to modify his child support obligation, the record reveals the parties tried the issue by implied consent. "Trial of an issue by implied consent will be found when a party opposed to the motion knew or should reasonably have known of the evidence relating to the new issue, did not

---

[5] The trial court ordered all interest on these amounts to accrue at 12% per annum.

object to this evidence, and was not prejudiced thereby." *Childs v. Roane County Bd. of Educ.*, 929 S.W.2d 364, 366 (Tenn. Ct. App. 1996) (citing *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888 (Tenn. 1980)). In his answer to Wife's petition to modify the visitation schedule Husband raised this issue as an affirmative defense, and Husband submitted a pre-trial brief which discussed the issue in detail. At the hearing, Husband offered testimony regarding the issue, testimony which drew no objection from Wife's counsel. Accordingly, it was proper for the trial court, and subsequently this Court, to consider the issue of whether the "additional child support" provision should be abolished. *See Jones v. Jones*, No. 01A01-9806-CV-00298, 1999 Tenn. App. LEXIS 270, at *3–10 (Tenn. Ct. App. Apr. 29, 1999).

We now turn to Husband's arguments on appeal in support of his position that the "additional child support" provision should be abolished. Husband asserts that, with regard to the "additional child support" provision, the trial court simply held that, since Husband had freely entered into the agreement, he is estopped from seeking an alteration. Husband contends the trial court erred in this regard for the following reasons: (1) the trial court ignored the legal rule stating child support provisions in the MDA merge into the order and remain subject to modification; (2) the significant variance rule in the Guidelines and changed circumstances require modification of his child support obligation in this case; (3) the Guideline's approach to variable income should have been applied in this case; and (4) the change in law in July 2001 required the provision to be eliminated retroactive to at least that time.

"Mothers and fathers certainly are free to agree that child support payments will be higher than mandated by the guidelines, and a trial court may approve such an agreement." *Cox v. Cox*, No. E2002-02034-COA-R3-CV, 2003 Tenn. App. LEXIS 257, at *7 (Tenn. Ct. App. Mar. 31, 2003). Such agreements are expressly provided for in the Tennessee Code, which states: "Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party or as to child support. . . ." Tenn. Code Ann. § 36-5-101(h) (2003). An MDA is essentially a contract between the parties. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). The Guidelines constitute the "minimum base for determining child support obligations." Tenn. Comp. R. & Reg. 124-2-4-.02 (5) (2003). This Court has previously stated:

> As the Guidelines only purport to create a minimum child support obligation, we find it entirely permissible for the parties to enter into an agreement which provides a method of calculating child support that is different from the percentage type mechanism contemplated in the Guidelines. . . . The only limitation to that right is the court's responsibility to insure that the children are adequately maintained. In that regard, the Child Support Guidelines provide the relevant standard.

*McDonald v. Cowan*, No. W1998-00730-COA-R3-CV, 2000 Tenn. App. LEXIS 26, at *11 (Tenn. Ct. App. Jan. 19, 2000); *see also* Tenn. Comp. R. & Reg. 1240-2-4-.02(4) (2003) (stating that, when

the parties present stipulations regarding child support to the court for approval, "the court shall use the guidelines in reviewing the adequacy of child support orders negotiated by the parties").

In the final judgment, the trial court stated that "[Husband] is estopped from asking this Court to set aside a portion of the agreement simply because [Husband] no longer thinks it is fair." Husband asserts that "by ruling that [Husband] was estopped to argue against the additional child support provision, the trial court abdicated its responsibility to determine if the additional child support provision should have been modified in accordance with the Guidelines then if [sic] effect." Husband cites to our decision in *Cox v. Cox*, No. E2002-02034-COA-R3-CV, 2003 Tenn. App. LEXIS 257 (Tenn. Ct. App. Mar. 31, 2003), for the proposition that "just because a parent agrees to pay something beyond what is required by the Guidelines does not mean that this obligation should not be modified to conform to the Guidelines at a later time."

The mere fact that the parties entered into an agreement regarding child support does not divest the trial court of its authority to modify that obligation when circumstances warrant. *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001). "A court in which an action for divorce is brought and which renders a decree respecting the care, custody and support of minor children continues to have jurisdiction of such matters until the children reach majority." *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *see also Sutton v. Sutton*, 417 S.W.2d 786, 787 (Tenn. 1967) (noting that this jurisdiction is exclusive). As enunciated by our supreme court:

> When the husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature. . . . [I]t is clear that the reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify.

*Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *see also Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Wade v. Wade*, 115 S.W.3d 917, 924 (Tenn. Ct. App. 2002).

Husband, however, overlooks an important aspect of our treatment of agreements reached by the parties in a divorce action:

> It is well established that parties may provide for child support by agreement. T.C.A. § 36-5-101(h); *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975); *Blackburn v. Blackburn*, 526 S.W.2d 463 (Tenn. 1975). In this regard, nothing prevents the parents from agreeing to a support amount in excess of the required minimum. *However, to the extent the agreement exceeds the legal duty of child support over which the court retains the power to modify, it is not merged into the decree and is enforceable as any other contract*. W. Walton Garrett, *Tenn. Divorce, Alimony and Child Custody* § 14-6 (1996). *Thus, any*

-11-

> *voluntarily assumed obligation exceeding the minimum support required is controlled exclusively by the parties' agreement. Boutin v. Boutin, 1996 Tenn. App. LEXIS 770, No. 01A01-9601-CH-00014, slip op. at 4–5 (Tenn. App. December 4, 1996).*

*Haas v. Haas*, No. 02A01-9604-CV-00073, 1997 Tenn. App. LEXIS 269, at *9–10 (Tenn. Ct. App. Apr. 22, 1997) (emphasis added). Husband's obligation to pay "21% of all bonus and other income as defined by the Tennessee Child Support Guidelines" derives from a contractual obligation, not a statutory one, since this amount is in excess of that required under the Guidelines. *See Mace v. Mace*, No. W2001-00574-COA-R3-CV, 2002 Tenn. App. LEXIS 274, at *7 (Tenn. Ct. App. Apr. 15, 2002) ("[A] child support obligation in excess of that which is legally mandated remains 'contractual' in nature even though it is incorporated into the final divorce decree."). As such, this provision remains a contract between the parties governed by the terms of the MDA, and we must construe it utilizing principles of contract law. *Boutin v. Boutin*, No. 01A01-9601-CH-00014, 1996 Tenn. App. LEXIS 770, at *8 (Tenn. Ct. App. Dec. 4, 1996); *see also Lovlace v. Lovlace*, No. M2003-01274-COA-R3-CV, 2004 Tenn. App. LEXIS 406, at *9–10 (Tenn. Ct. App. June 28, 2004).

This result is further supported by the provisions in the MDA itself, which provides:

> 24. Each of the parties expressly certify that each of them has entered into this Agreement upon mature consideration; that the consent to execution of this Agreement has not been obtained by duress, fraud or undue influence; that no representation of facts has been made by either party to the other except as herein set forth; that the parties fully understand this Agreement; furthermore, that each of the said parties has been represented by able counsel who have explained to them the effects of this Agreement and the contents.
> 25. No modification of this Agreement shall be binding upon either of the parties unless reduced to writing and subscribed by both parties. This Agreement is intended as a full, final and complete settlement of the property rights, marital and otherwise, of the parties hereto.
>  . . . .
> 27. *Since this Marital Dissolution Agreement provides for the payment of child support, pursuant to T.C.A. § 36-5-101(h)*, the parties affirmatively acknowledge that no action by the parties will be effective to reduce child support after the due date of each payment, and the parties understand that Court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of the Marital Dissolution Agreement.

Each argument raised by Husband seeking to abolish the "additional child support" provision of the MDA constitutes an attempt to have this Court abolish or modify the provision by applying various provisions of the Guidelines or statutes affecting them. "Any amounts of support that are not legally mandated but are imposed solely by the MDA, are not subject to revision by the court." *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001). When the parties agree to provide additional child support not required by law, the courts of this state will not relieve the parties of that obligation when such obligations later prove burdensome or ill conceived. *Id.* at 152 (citing *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999)). We find the trial court did not err in refusing to abolish the "additional child support" provision in the MDA.

During oral argument, Husband pointed to the language used in the "additional child support" provision in the MDA, noting it refers to "21% of all bonus or other income as defined by the Tennessee Child Support Guidelines." He argues that he never intended to pay more child support than an amount required under the Guidelines, especially since the MDA states the child support obligation is in compliance with the Guidelines. In addition, Husband contends that the Guidelines do not define "other income," only "gross income." However, the record reveals that Husband did intend to provide child support in excess of that required by the Guidelines. Prior to the final decree of divorce, Husband submitted a memorandum required by the local rules of court for Shelby County which provided:

> 7.     Husband should pay child support pursuant to the Child Support Guidelines to be calculated as follows: *21% of his base salary of $160,000 to be paid monthly; plus 21% of amounts included as income, such as bonuses, etc. as defined by the Guidelines* upon Husband's receipt of same, based on timely notice to Wife of receipt and payment to her within 10 days of receipt.

Accordingly, we find Husband intended to provide additional child support in the amount of 21% on all amounts, other than his base salary, qualifying as income under the Guidelines. The Guidelines provide:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, *bonuses*, overtime payments, *dividends*, *severance pay*, pensions, interest, trust income, annuities, *capital gains*, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment.

Tenn. Comp. R. & Reg. 1240-2-4-.03(3)(a)1 (2003) (emphasis added).

In his second issue on appeal, Husband alleges the trial court erred in applying the "additional child support" provision to the severance payment he received from his previous employer. The trial court's order results in Husband paying $310,551.00 in additional child support on the severance payment. Husband argues such an award constitutes error for two reasons: (1) it violates section 36-5-101(e)(1)(B) of the Tennessee Code, which was in effect when Husband received his severance payment, and (2) this "one-time" event should not create a child support obligation because creating an additional trust, when Husband already agreed to provide for Daughter's education in the MDA,[6] would result in a windfall to Wife not contemplated by the Guidelines.

Section 36-5-101(e)(1)(B)[7] of the Tennessee Code provides that, "if the net income of the obligor exceeds ten thousand dollars ($10,000) per month, then the custodial parent must prove by a preponderance of the evidence that child support in excess of that amount . . . is reasonably necessary to provide for the needs of the minor child." Tenn. Code Ann. § 36-5-101(e)(1)(B) (2003). Husband, however, overlooks the fact that he has contractually obligated himself to pay child support above the amount mandated by the Guidelines. *See Haas v. Haas*, No. 02A01-9604-CV-00073, 1997 Tenn. App. LEXIS 269, at *9–10 (Tenn. Ct. App. Apr. 22, 1997) (noting that the amount over that required by the Guidelines does not merge into the decree, and becomes enforceable as any other contract). Having done so, the trial court correctly made the severance payment subject to the "additional child support" provision in the MDA. *See Bryan v. Leach*, 85 S.W.3d 136, 151–52 (Tenn. Ct. App. 2001). "The establishment of a trust for educational or other purposes for the benefit of a child is a discretionary mechanism or alternative arrangement that is available to the trial court in fashioning a support award for the benefit of the child." *Id.* at 153 (citations omitted). Accordingly, we affirm the trial court's decision in this regard.

In his third issue raised on appeal, Husband argues the trial court erred in refusing to reduce Husband's income from the severance payment by that portion attributable to salary he would have received had his employment not been terminated in 1997. Husband contends that, by failing to reduce the child support owed on the severance by that amount attributable to salary, he has been ordered to effectively pay child support on the same source of income twice. However, at trial, Husband's accountant, Mr. DeGutis, testified regarding the proper amount of child support owed on the severance package. In fact, he prepared an exhibit entitled "Calculation of Potential Additional Child Support on Severance and Other Post-Employment Benefits from PCS" which showed the potential additional child support to be $310,551.00. Mr. DeGutis testified that he prepared this document at Husband's request, and, in fact, Husband told him what to include or exclude from the document. This document does not mention an exclusion for salary previously owed. Husband

---

[6] The MDA provides: "Husband shall pay the tuition, room and board costs, and educational fees for Mary Rose to attend four (4) years of college up to a maximum aggregate amount equal to that for a boarding student at Dartmouth College."

[7] In his brief, Husband cites to section 36-2-101(e)(1)(B) of the Tennessee Code. However, section 36-2-101 of the Tennessee Code, dealing with paternity, has been repealed by the legislature. We presume Husband is referring to the above cited section of the Tennessee Code.

cannot be heard to complain when his own accountant proposes an amount owed on the severance package as child support, and the trial court subsequently orders that exact amount in its order. Accordingly, we find this issue to be without merit.

In his fourth issue, Husband argues the trial court erred when it ruled: "That Mr. Kesser be ordered to immediately pay to Ms. Kesser the sum of $90,715.41 plus interest beginning January 2000, as the additional child support amounts due pursuant to the accounting errors and as testified to by Vallette Windham." Husband raises numerous sub-issues within the framework of this larger issue.

First, Husband argues that this ruling by the trial court constituted error because the trial court failed to deduct from this amount interest owed on the SARs withholdings. Husband argues that the trial court, in essence, awarded Wife the same amount twice. Husband states in his brief that he refuted the calculations relied on by Ms. Windham by "his own testimony," but he directs our attention to a pre-trial affidavit and a pre-trial memorandum he submitted to the trial court. Only his pre-trial memorandum was introduced as an exhibit at trial. However, Husband does not direct us to any particular authority in his pre-trial memorandum to support a different result. In addition, we have not located, nor does Husband direct our attention to, any testimony in the record by his accountant refuting the calculations made by Ms. Windham.[8] Matters of credibility are left within the sound discretion of the trial court. *Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 Tenn. App. LEXIS 385, at *18–19 (Tenn. Ct. App. June 22, 1999).

Second, Husband argues this amount includes capital gains earned by Husband for tax years 1995, 1996, and 1997. Husband contends the trial court erred by refusing to offset these capital gains by capital losses. Husband contends the Guidelines' definition of gross income is based upon the concept of gross income in the federal tax code, which allows an offset for capital losses. In support of this proposition, he cites our decision in *Alexander v. Alexander*, 34 S.W.3d 456, 462–63 (Tenn. Ct. App. 2000), where we stated:

> We start by noting that capital gains are included within the definition of gross income in the Guidelines. Tenn. Comp. R. & Reg., ch. 1240-2-4-.03(3)(a). *See also Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999) ("Generally, capital gains are included in the definition of gross income."). Father argues that "there is no indication that the term 'capital gains' [as used in the Guidelines] is analogous to the term used in the Internal Revenue Code." While this correlation is not expressly stated in the Guidelines, we find and hold that it is logical to equate these two concepts. Speaking rhetorically, if we cannot use the definition of a capital gain adapted by the

---

[8] The Tennessee Rules of Appellate Procedure provide as follows: "Except as provided in Rule 28(c), reference in the briefs to the record shall be to the pages of the record involved. . . ." Tenn. R. App. P. 27(g) (2003).

Internal Revenue Service, to what source should we resort?  Father does not suggest an alternative definition.

However, in *Abercrombie v. Abercrombie*, No. E2003-01226-COA-R3-CV, 2004 Tenn. App. LEXIS 187, at *22–25 (Tenn. Ct. App. Mar. 29, 2004), we stated:

> While a federal income tax return is a valuable source of data when calculating an obligor's child support obligation under the Guidelines, it is important to recognize that the object of a tax return is very different from that of the Guidelines. A tax return is designed to determine "taxable income" under the federal tax code; the Guidelines are designed to determine "net income" *as that concept is defined in the Guidelines*. The Guidelines' "net income" concept is vastly different from the federal tax code's concept of "taxable income." By the same token, the Guidelines' concept of "gross income" is not the same as the federal tax code's concept of "adjusted gross income." Thus, while a tax return, generally speaking, will yield valuable *data* for a trial court in setting child support, it is a mistake to use the federal tax return as if the concepts mentioned above were interchangeable. They are not.
>
> Under the Guidelines, "gross income" includes "capital gains." However, the Guidelines' definition of "gross income" does not include a reference to "capital losses" or to "negative capital gains," nor are these terms mentioned in any other part of the Guidelines. We believe there is a good reason for this omission.
>
> Generally speaking, in the typical non-installment sale of a capital asset at a profit, the seller immediately gets (1) a return of his cost or other basis and (2) his profit. The General Assembly, in adopting the Guidelines, made a policy decision that profit on the sale of a capital asset is a part of an obligor's gross income. This makes sense because, in the typical sale of a capital asset at a profit--say of a publicly-traded common stock--the seller receives cash representing a return of his cost or other basis and his profit. When one sells a capital asset at a loss, the loss simply erodes the seller's capital. The seller does not have "to go into his or her pocket" to pay for the loss out of other spendable funds. In the case of a capital gain, available funds to pay child support are supplemented while, in the other case--that of a capital loss--there is no decrease in spendable money; rather there is an erosion of the seller's capital asset base. While the federal government has made a policy decision to consider, in a limited fashion, the erosion of the taxpayer's capital asset base in calculating "taxable income," there is nothing to suggest that the

-16-

> Guidelines have adopted a similar approach to the calculation of "net income."

Accordingly, we find this argument to be without merit and affirm the trial court's decision not to allow an off-set to this amount for capital losses.

Third, Husband argues the trial court erred by requiring Husband to pay additional child support on capital gains derived from the sale of assets awarded to him under the MDA, which provides:

> The requirement to pay 21% of all other income as defined by the Tennessee Child Support Guidelines shall begin with any income received after July 25, 1995 *and shall not apply to the sale/liquidation of assets which are subject to division pursuant to T.C.A. § 36-4-121 and which assets are divided elsewhere in this Agreement.*

Husband contends that, within the additional child support award, the trial court included capital gains on stock he received distributed to him under the final divorce decree. This, according to Husband, violated the above cited provision in the MDA.

Although Husband cites to no authority for this proposition, we find our statement in *Taylor v. Taylor*, No. M1999-02398-COA-R3-CV, 2003 Tenn. App. LEXIS 426, at *29 (Tenn. Ct. App. June 6, 2003), to be instructive:

> As a general matter, all capital gains – even those realized from an isolated transaction – must be considered as gross income for the purpose of determining an obligor parent's child support obligation. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(a) (1994); *Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999). The only judicially created exception to this rule involves capital gains resulting from the sale of an asset to fund the division of property in a divorce case. *Alexander v. Alexander*, 34 S.W.3d 456, 464 (Tenn. Ct. App. 2000). The purpose of this exception is to prevent the "double dipping" that would result if capital gains were considered both as a marital asset and as income.

Having established that the "additional child support" provision is contractual in nature, the above cited language in the MDA clearly establishes that the parties did not intend for the capital gains from the sale of such property to fall within the purview of the additional child support provision. Accordingly, the trial court erred to the extent the trial court's award is based on such amounts. On remand the trial court is instructed to determine that portion of the $90,715.41 award which

-17-

represents capital gains from the sale of property awarded to Husband in the final divorce decree and deduct such amounts from the award.

Husband's fourth contention with regard to the $90,715.41 additional child support award is that it contains certain non-cash, non-taxable compensation credited by Husband's former employer to certain retirement benefits. We need not decide, as Wife suggests, whether these amounts constitute income under the Guidelines. We need only refer to the above cited provision of the MDA, where the parties expressly agree to exclude from the "additional child support" calculation any income generated from the sale/liquidation of property awarded in the divorce decree. The MDA expressly awards Husband his retirement benefits. Accordingly, the trial court erred in including such amounts in its calculation of additional child support. On remand, the trial court is to determine those amounts representing contributions to Husband's retirement plans and deduct them from the overall award.

We now turn to Husband's final argument involving this issue, where he argues that the $90,715.41 includes increases in Husband's salary above the $166,000 base salary at the time of the divorce. We agree with Husband in that such amounts should not be used to calculate additional child support. First, the "additional child support" provision in the MDA itself references "other income" and speaks of "bonuses." Second, Husband's base child support obligation, discussed more fully below, is based solely upon his fixed annual salary. Any changes to this base child support amount remain subject to modification under the Guidelines. *See Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). Accordingly, the trial court erred in including within the award of additional child support any amounts attributable to Husband's increases in base salary. On remand, the trial court is instructed to identify such amounts and deduct them from the final award of additional child support.

Husband's fifth issue on appeal focuses upon the trial court's inclusion of a $40,000 bonus earned by Husband in 2002 in calculating both Husband's base child support obligation and his additional child support obligation. Particularly, the trial court held that Husband owed $6,580.00 plus interest on the bonus as additional child support. We discuss issues related to Husband's base child support obligation more fully below, but for our purposes here we note that the additional child support provision, which remains contractual in nature, clearly states that Husband will pay 21% of all "bonus" income as additional child support in addition to his base child support obligation. The Guidelines clearly mandate that the trial court is to consider "all income from any source" including "bonuses" when calculating gross income. Tenn. Comp. R. & Reg. 1240-2-4-.03(3)(a)1 (2003). Accordingly, we affirm the court's decision to apply the additional child support provision to the $40,000.00 bonus, and the trial court did not err in using this same amount to calculate Husband's additional child support obligation.

-18-

## B.
### *Husband's base child support obligation*

Regarding Husband's base child support obligation, the trial court ruled, in relevant part, as follows:

> Mr. Kesser filed his Rule 14(c) Affidavit on July 9, 2003. This Affidavit shows Mr. Kesser's gross income of $280,147.00 per year. Based upon the deductions shown, his net income per month is $17,341.58. (No provisions need be made for his current wife, Janice Kesser's income, although it appears on the affidavit.)
>
> Pursuant to the new provision of the Tennessee Child Support Guidelines, since an increase in support is appropriate, Mr. Kesser's net income should be reduced by sixteen (16%) [sic] because he has two (2) other children at home that he is legally required to support.[9] This reduces Mr. Kesser's net income to $14,566.93 per month ($17,341.58 x 84% = $14,566.93). This becomes Mr. Kesser's net income for child support purposes. Applying the twenty-one percent (21%) to his net results in a base child support amount of $3,059.05 ($14,566.93 x 21% = $3,059.05) per month.
>
> Since Mr. Kesser's net income exceeds $10,000 per month, the Court must order a minimum child support in the amount of $2,100.00. The remaining amount of child support that is appropriate becomes discretionary with the Court. This amount, $959.05, should be paid to Ms. Kesser because the child, Mary Rose, attends a private school that, as Ms. Kesser testified, costs $12,000.00 per year to attend.
>
> Therefore, based upon Mr. Kesser's income, and upon the application of the child support guidelines Mr. Kesser's child support should be increased to $3,059.00 per month beginning August 2003. Ms. Kesser's obligation to reimburse Mr. Kesser $350.00 per month for travel should be modified to provide that the reimbursement payment be made by crediting Mr. Kesser with that amount on his monthly child support obligation, excluding any month in which no air travel for visitation with Mr. Kesser is involved.

Husband has raised several issues on appeal contesting this aspect of the trial court's ruling.

Husband's sixth issue on appeal addresses Wife's failure to prove that additional support was necessary pursuant to section 36-5-101(e)(1)(B) of the Tennessee Code, which provides:

---

[9] At the time of the order, Husband and his current wife were attempting to adopt a third child from China. Their efforts proved successful when they adopted their third child in November 2003.

Notwithstanding any provision of this section or any other law or rule to the contrary, if the net income of the obligor exceeds ten thousand dollars ($10,000) per month, then the custodial parent must prove by a preponderance of the evidence that child support in excess of the amount, [calculated by multiplying the appropriate percentage set forth in the child support guidelines by a net income of ten thousand dollars ($10,000) per month], is reasonably necessary to provide for the needs of the minor child or children of the parties. In making its determination, the court shall consider all available income of the obligor, as required by this chapter, and shall make a written finding that child support in excess of the amount so calculated is or is not reasonably necessary to provide for the needs of the minor child or children of the parties.

Tenn. Code Ann. § 36-5-101(e)(1)(B) (2003); *see also* Tenn. Comp. R. & Reg. 1240-2-4-.04(3) (2003).[10] The trial court expressly references Wife's testimony regarding Daughter's private school tuition, which the trial court relied on to justify an amount in excess of the $2,100.00 mandated by the Guidelines. Husband contends this is erroneous because Daughter has attended private school since 1996, therefore, an increase is not justified.

"While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). The record does not preponderate against the trial court's finding that an amount of child support above that required by the Guidelines is warranted in this case. *See Turner v. Yovanovitch*, No. M2002-01164-COA-R3-CV, 2003 Tenn. App. LEXIS 656, at *10–12 (Tenn. Ct. App. Sept. 11, 2003). In addition, the trial court could properly order that any amount above the amount set by the Guidelines be placed into a trust in favor of Daughter. Tenn. Comp. R. & Reg. 1240-2-4-.04(3)(f) (2003); *see also Redmond v. Hunt*, No. W2004-00127-COA-R3-JV, 2004 Tenn. App. LEXIS 830, at *13–15 (Tenn. Ct. App. Dec. 10, 2004).

In his seventh issue, Husband argues the trial court erred by failing to consider a downward deviation in child support based on Husband's excess visitation with Daughter. Husband specifically requested a downward deviation based on excess visitation in his petition for modification, yet the trial court's final judgment made no mention of such request. Husband contends the trial court "completely failed to consider a downward deviation based on excess parenting as required by the Guidelines." However, at the hearing on Husband's motion to alter or amend the final judgment,

---

[10] Although raised as an issue under the trial court's treatment of the "additional child support" provision, we pause here to note, once again, that the trial court properly included the $40,000.00 bonus earned by Husband in 2002 in its calculation of the base child support obligation. *See* Tenn. Code Ann. § 36-5-101(e)(1)(B) (2003); Tenn. Comp. R. & Reg. 1240-2-4-.04(3) (2003) ("The court must consider all net income of the obligor as defined according to 1240-2-4-.03 of this rule.").

the trial court heard oral argument from both parties regarding this issue, but the court declined to modify the child support obligation based upon Husband's argument.

The Guidelines provide that, "[i]n situations where overnight time is divided more equally between the parents, the courts will have to make *a case-by-case determination* as to the appropriate amount of support (reference 1240-2-4-.04)." Tenn. Comp. R. & Reg. 1240-2-4-.02(6) (2003) (emphasis added). A trial court "*may consider* a downward deviation from the guidelines if the obligor demonstrates that he/she is consistently providing more care and supervision for the children than contemplated in the rule." Tenn. Comp. R. & Reg. 1240-2-4-.04(1)(b) (2003) (emphasis added); *but see Parrish v. Parrish*, No. W2004-00021-COA-R3-CV, 2004 Tenn. App. LEXIS 771, at *9–13 (Tenn. Ct. App. Nov. 17, 2004) (noting that an upward deviation is mandatory when a parent fails to exercise visitation for the average period set forth in the Guidelines). "Deviation from the guidelines *may be appropriate* in other cases when the court finds it is in the best interest of the child(ren) including . . . cases where physical custody of the child(ren) is more equally divided between the parties than occurs in a situation where one party has an average amount of overnight visitation as defined in 1240-2-4-.02(6)." Tenn. Comp. R. & Reg. 1240-2-4-.04(2)(b) (2003) (emphasis added).

In his brief, Husband makes several statements to indicate he spends more time with Daughter than contemplated by the Guidelines. However, Husband does not direct this Court to any instance in the record where he demonstrated to the trial court that he "is consistently providing more care and supervision for the children than contemplated in the rule." *See* Tenn. Comp. R. & Reg. 1240-2-4-.04(1)(b) (2003); *see also* Tenn. R. App. P. 27(g) (2003) ("Except as provided in rule 28(c), reference in the briefs to the record shall be to the pages of the record involved."). Accordingly, we cannot say that the trial court erred in this regard.

In his eighth issue, Husband argues the trial court properly reduced his base child support obligation to reflect his duty to provide for his other two children, but the court erred by not taking into account Husband's third daughter whom he became legally obligated to support in November 2003 after the trial court entered its final judgment.[11] Husband raised this issue in his motion to alter or amend the final judgment, and, after the hearing on Husband's motion, the trial court issued an order denying the motion but providing:

> 2. Regarding the issue of a child support adjustment for the adoption of a third child, the Defendant must show that he is legally obligated to provide support for the child. Once the Defendant is legally obligated to support the child he may Petition the Court for a modification of his child support as provided by the guidelines and

---

[11] Husband also argues that the trial court erred by not reducing his additional child support obligation to reflect his need to provide for his other children. As stated previously, the additional child support provision is a contractual obligation which we decline to modify. *See Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001).

the Petition shall be referred to the Shelby Country [sic] Divorce Referee as provided in the local rules.

Section 36-5-101(e)(4)(A) of the Tennessee Code provides:

In addition to any other subtractions, calculations of net income under the guidelines shall take into consideration the support of any other children the obligor is legally responsible to provide. The court shall consider the children of the obligor who are not included in a decree of child support, but for whom the obligor is legally responsible to provide support and is supporting for the purposes of reducing the obligor's net income, in calculating the guideline amount, or as a reason for deviation from the guidelines.

Tenn. Code Ann. § 36-5-101(e)(4)(A) (2003); *see also* Tenn. Comp. R. & Reg. 1240-2-4-.03(4)(e) (2003). Wife argues that the trial court committed no error because Husband had not legally obligated himself to support the third child at the time of the hearing. Wife contends that the trial court could not enter hypothetical child support based on an obligation Husband may or may not have incurred. In order to prevent endless litigation and to promote finality in resolving the issues presented on appeal, the trial court is instructed to entertain any petition filed by Husband on remand seeking a modification to his base child support obligation—consistent with the Guidelines, this opinion, and the local rules of court—based upon his incurring a legal obligation to support his adopted third child.

Husband's ninth issue simply restates prior arguments in support of his position that the trial court erred in setting his future child support obligation. In this section of his brief, Husband proposes a formula for this Court to use in setting his future child support obligation. We have addressed these same arguments in the previous paragraphs of this opinion, and we have set forth those instances where a remand is necessary. Accordingly, we find Husband's ninth issue to be without merit.

In his tenth issue raised on appeal, Husband contends the trial court erred in failing to award him certain amounts owed to him by Wife. Husband claims the record showed that Wife owed the following sums: (1) $760.00 for Daughter's orthodontic treatment which, pursuant to the MDA, the parties are to pay for equally; and (2) $2,175.35 in under-withheld taxes from the 1997 SARs exercise.[12] In addition, Husband notes that the trial court revised the MDA provision concerning Wife's duty to provide $350.00 per month in travel costs, which the MDA required Wife to pay each month to defray Husband's travel expenses incurred in exercising his visitation with Daughter. The

---

[12] Husband included in his motion to alter or amend a request that the trial court issue a ruling on Wife's obligation to reimburse him for the SARs taxes he over-withheld from the 1997 SARs exercise in the amount of $2,175.35. Husband also included a request that the court issue a ruling regarding Wife's obligation to reimburse him for $760.00 in orthodontic treatment for Daughter.

trial court's order provided: "Ms. Kesser's obligation to reimburse Mr. Kesser $350.00 per month for travel should be modified to provide that the reimbursement payment be made by crediting Mr. Kesser with that amount on his monthly child support obligation, excluding any month in which no air travel for visitation with Mr. Kesser is involved."

The trial court ordered Wife, pursuant to the order regarding the visitation issues, to pay Husband "$1,041.44 for travel reimbursement payments previously unpaid or, in the alternative, if she so requests, the father may credit those against one of his monthly child support payments." Father requests this Court to enforce the provision in the MDA, yet Father is the one that requested the trial court modify this MDA provision to alleviate Wife's late payments. We cannot find that the trial court abused its discretion regarding the travel expenses, especially in light of the fact that the court saw fit to adjust the visitation schedule at the parties' request.

Upon reviewing Father's petition for modification, we find no reference to Daughter's orthodontic treatment or under-withheld SARs taxes. However, like so many issues involved in this case, the record does reveal that these issues were tried by consent of the parties. *See* Tenn. R. Civ. P. 15.02 (2003); *Childs v. Roane County Bd. of Educ.*, 929 S.W.2d 364, 366 (Tenn. Ct. App. 1996). Father offered proof at trial, without objection by Wife, that Wife owed him $760.00 for Daughter's orthodontic treatment and $2,175.35 in under-withheld taxes from the 1997 SARs exercise. Upon reviewing the final judgment and the court's ruling on Husband's motion to alter or amend the judgment, we find no definitive statement by the court resolving these issues. Accordingly, on remand the trial court is instructed to determine whether these amounts should be paid by Wife.

*C.*
***The SARs exercises***

Turning to the SARs exercises, the trial court, relying on the testimony of Mr. DeGutis, found that Husband's effective tax rate for 1996 was 34.01%. As such, the trial court ruled that Husband owed Wife additional amounts on the SARs exercises as follows:

**1996 SARs**

| | |
|---|---|
| Gross amount | $1,043,233.12 |
| Effective tax rate | 34.01% |
| | |
| Income Tax attributed to SARs | 354,803.58 |
| Medicare tax 1.45% | 15,126.87 |
| Social Security | 4,960.00 |
| | |
| Total Tax Due | 374,890.45 |
| | |
| Total Net Due to Ms. Kesser<br>($1,043,233.12 – $374,890.45) | $668,342.67 |

| | |
|---|---|
| Less original amount paid by Mr. Kesser | 584,210.55 |
| Less second amount paid by Mr. Kesser | 21,182.69 |
| Total owed by Mr. Kesser (not including interest) | $62,949.43 |

The same calculation must be made for the 1997 SARs exercise, which is as follows:

### 1997 SARs

| | |
|---|---|
| Gross amount | $109,882.96 |
| Effective tax rate | 29.47% |
| Income Tax attributed to SARs | 32,382.51 |
| Medicare tax 1.45% | 1,593.31 |
| Social Security | 4,960.00 |
| Total Tax Due | $38,935.82 |
| Total Net Due to Ms. Kesser ($109,882.96 – $38,935.82) | $70,947.14 |
| Less amount paid by Mr. Kesser | 64,776.01 |
| Total owed by Mr. Kesser (not including interest) | $6,171.13 |

As a result of Mr. Kesser charging Ms. Kesser more taxes than that charged by the IRS and retaining those additional sums, Mr. Kesser owes Ms. Kesser the sum of $69,120.56. Interest should accrue, at the rate of five percent (5%) beginning January 1997 (for the 1996 amount due) and January 1998 (for the 1997 amount due).

In his eleventh issue raised on appeal, Husband begins by contending the trial court erred in ordering him to pay $69,120.56 in improperly withheld taxes because the issue had not been raised in any of the pleadings filed by Wife. First, Husband contends the trial court erred procedurally by entertaining the issue when Wife did not include the issue in any of her pleadings. According to Husband, the record does not support the trial court's conclusion because Wife merely "floated a theory" at trial he had no chance to rebut. We find this aspect of the eleventh issue raised by Husband to be without merit. Wife's petition for contempt did list specific grounds for relief, but she also included a request that the trial court order Husband to "comply with the terms of the Marital Dissolution Agreement" and for general relief. That this issue was properly before the trial

-24-

court is further evidenced by Husband's own pre-trial memorandum, in which he devotes six pages to the issue. Throughout these pages Husband repeatedly references Wife's arguments regarding the SARs exercises. Accordingly, it is disingenuous for Husband to now argue the trial court could not properly entertain the issue. Even if Wife failed to adequately plead the issue, we find that the issue has been tried by consent of the parties. *See* Tenn. R. Civ. P. 15.02 (2003). "Trial of an issue by implied consent will be found when a party opposed to the motion knew or should reasonably have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby." *Childs v. Roane County Bd. of Educ.*, 929 S.W.2d 364, 366 (Tenn. Ct. App. 1996) (citing *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888 (Tenn. 1980)).

Next, Husband contends the trial court erred substantively in calculating the improperly withheld taxes on the SARs exercises. In calculating the amount of taxes improperly withheld by Husband on the SARs exercises, the trial court stated: "Vince DeGutis, Mr. Kesser's accountant, testified that Mr. Kesser's effective tax rate for 1996 was 34.01%." Husband contends that the court erred by using effective tax rates to reach the final amount. In this case, both parties presented expert testimony by their respective accountants on the proper method to calculate the improperly withheld taxes on the SARs exercises. After thoroughly reviewing the record, we conclude that the evidence presented to the trial court regarding this issue does not preponderate against the trial court's finding of fact.

> When the resolution of the issues in a case depends upon the credibility of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997); *see also McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given greater weight by the appellate court. *See In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *McCaleb*, 910 S.W.2d at 415. The trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses that contradicts the trial court's findings. *See Hawkins v. Ellis*, 1998 Tenn. App. LEXIS 673, at*11, No. 02A01-9708-CH-00203, 1998 WL 704521, at *4 (Tenn. App. Oct. 12, 1998) (citing *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. App. 1990)).

*Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 Tenn. App. LEXIS 385, at *18–19 (Tenn. Ct. App. June 22, 1999); *see also Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); *Morris v. Norwood*, No. E1999-01328-COA-R3-CV, 2000 Tenn. App. LEXIS 251, at *12–13 (Tenn. Ct. App. Apr. 24, 2000).

In his twelfth issue raised on appeal, Husband contends the trial court erred in awarding Wife $8,199.36 for 1996 and $735.10 for 1997 in interest on the amount Husband withheld on the 1996 and 1997 SARs exercises. Husband argues the MDA, along with the letter memorializing the parties' agreement regarding the taxes withheld on the SARs income, "established a framework for dealing with the SARs income, the applicable taxes, and the related tax withholdings." "Prejudgment interest . . . may be awarded by courts . . . in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum. . . ." Tenn. Code Ann. § 47-14-123 (2003). "The award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion." *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). Our examination of the record in this case does not reveal an abuse of discretion by the trial court regarding this issue.

### D.
### *Attorney's fees*

We now come to Husband's thirteenth and final issue on appeal. Husband contends the trial court erred in granting Wife $43,000.00 in attorney's fees below. Husband argues the record reveals that both parties prevailed on various issues; Wife prevailed on more of the child support issues, while Husband prevailed on more of the visitation issues. Instead, Husband argues the trial court should have required each party to pay their respective attorney's fees. In the alternative, Husband contends the trial court should have limited Wife's attorney's fees "to those fees and expenses related to those issues on which she was successful."

The trial court's final judgment provided:

> Ms. Kesser has incurred attorney fees in excess of $43,000.00. Mr. Kesser has admitted that he has not obeyed this Court's Order. Ms. Kesser's Petitions dealing with support and visitation were an attempt to protect her child. Mr. Kesser should be responsible for Ms. Kesser's attorney fees.

In cases involving the enforcement of a child support obligation, the legislature has provided that:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the

court, before whom such action or proceeding is pending, in the discretion of the court.

Tenn. Code Ann. § 36-5-103(c) (2003). "The decision to award attorney's fees to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992) (citations omitted). We cannot find that the trial court abused its discretion in this regard.

In turn, Wife requests that this Court award her attorney's fees incurred on appeal. "The determination of whether to award attorney's fees for an appeal is within our discretion." *Harris v. Harris*, 83 S.W.3d 137, 141 (Tenn. Ct. App. 2001) (citing Tenn. Code Ann. § 36-5-103 (2000)). Since both parties have been partially successful on appeal, we decline Wife's request. *See Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973); *see also Parrish v. Parrish*, No. W2004-00021-COA-R3-CV, 2004 Tenn. App. LEXIS 771, at *24–26 (Tenn. Ct. App. Nov. 17, 2004).

## IV.
### CONCLUSION

For the reasons set forth herein, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are to be born equally between the Appellant, Peter Hale Kesser, and his surety, and the Appellee, Mary Warren Kesser, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE