IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 12, 2011 Session

# JERRY ANN WINN v. WELCH FARM, LLC, ET AL.

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVCD0762     Laurence M. McMillan, Chancellor**

---

**No. M2010-02558-COA-R3-CV - Filed August 31, 2011**

---

The buyer of unimproved real property sued the sellers for breach of implied warranties, imposition of a permanent nuisance, and diminution in value of the property; buyer also sought damages for alleged violations of the Tennessee Real Estate Broker License Act, the duty of good faith and fair dealing, the Tennessee Consumer Protection Act, and negligence. The trial court held that Tennessee does not provide a cause of action for breach of implied warranty in the sale of unimproved real property; the court also held that buyer had not demonstrated a genuine issue of material fact as to whether the lot was "unbuildable." The court granted summary judgment to the defendants, and the buyer appealed. Buyer asserts that the sellers had a duty to disclose "possible adverse soil conditions." She also urges this Court to adopt a cause of action for breach of implied warranty of suitability for residential construction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Joe Weyant, Clarksville, Tennessee, for the appellant, Jerry Ann Winn.

W. Timothy Harvey, Clarksville, Tennessee, for the appellee, Welch Farm, LLC and Richard Tucker.

**OPINION**

## I. Background

Jerry Ann Winn filed suit against Welch Farm, LLC, ("Welch") to recover damages and other relief arising out of Welch's sale to her of unimproved real property in the

Savannah Chase development in Montgomery County. Ms. Winn asserted causes of action for breach of implied warranty, imposition of a permanent nuisance, and diminution in value. Ms. Winn alleged that, when she began to excavate the lot, water immediately filled the excavated troughs. An engineer investigated the lot and determined that the drainage flow of the lot had likely been altered when the surrounding lands were developed; as a result, the "structural integrity" of the lot was destroyed. Ms. Winn alleged that Welch caused the alteration in drainage and was or should have been aware at the time of sale that the lot was not suitable for the construction of a home.

Welch admitted that it had sold the lot to Ms. Winn but denied that it knew about the drainage issue. Welch also denied that the lot was impaired, that there was a permanent nuisance on the lot, that it breached any implied warranties, and the diminution in the value of the lot. Welch subsequently filed a motion for summary judgment, as to which Ms. Winn responded. As part of her response, Ms. Winn moved to amend the complaint to add Richard Tucker, who had represented Welch in the sale of the property, as a defendant. The trial court granted the motion to amend and reserved judgment on the motion for summary judgment.

Ms. Winn filed a Second Amended Complaint for Damages which restated her original causes of action against Welch. She added Mr. Tucker as a defendant and alleged that he had "specialized knowledge of the soil conditions, topography, and suitability for residential construction" of the lot. Ms. Winn asserted that Mr. Tucker was previously a licensed real estate broker and had a duty "to disclose known possible defects and soil deficiencies." In addition to the damages and relief sought in the original complaint, Ms. Winn sought damages for Mr. Tucker's alleged violations of the Tennessee Real Estate Broker License Act, the duty of good faith and fair dealing, the Tennessee Consumer Protection Act, and "negligence in breaching such statutory duty."

Defendants answered the amended complaint and filed a new motion for summary judgment, along with a statement of undisputed facts and memorandum of law. Defendants contended that a cause of action for breach of implied warranty of suitability for residential construction was not recognized in Tennessee; that defendants did not create a nuisance; and that Ms. Winn was unable to prove that either of the defendants had "used [their] property or [their] right to injure the plaintiff." In specific reference to the allegations directed at him, Mr. Tucker contended that the Consumer Protection Act claim should fail because he was unaware of any defects in the property, and that the Real Estate Broker License Act claim should fail because he was not a licensed real estate broker and because there was no agency relationship. In further support of the motion, Mr. Tucker filed his own affidavit and portions of his deposition.

Ms. Winn filed a response, which included individual responses to the averments in defendants' statement of material facts; Ms. Winn also filed a Concise Statement of Additional and Disputed Material Facts, as to which the defendants responded.

The trial court granted the motion for summary judgment and dismissed the case; in its order, the trial court wrote, "the Court believes there are no genuine issues of material fact and that the Respondents are entitled to judgment as a matter of law." Ms. Winn appealed the dismissal of the case, and on June 4, 2010 this Court vacated the trial court's order because it failed to comply with Tenn. R. Civ. P. 56.04 in that it did not state the legal grounds upon which the trial court granted the motion for summary judgment. *Winn v. Welch Farm, LLC*, M2009-01595-COA-R3-CV, 2010 WL 2265451 (Tenn. Ct. App. June 4, 2010).

Thereafter, defendants filed a motion in the trial court requesting that the court enter an order setting forth the grounds upon which summary judgment was granted or, in the alternative, that the motion for summary judgment be set for a rehearing. A hearing was held, and on November 5, 2010, the trial court granted the motion and dismissed the case, stating the following as the basis:

1. Tennessee does not recognize a cause of action for breach of an implied warranty in a real estate transaction concerning unimproved real property, and
2. The Court is of the opinion there are no genuine issues of material facts and the record does not provide any evidence which indicates the Petitioner's lot was unbuildable.

Ms. Winn appeals, stating the following issues:

1. Whether the appellees had a duty to disclose possible adverse soil conditions within the subject undeveloped lot.
2. Whether an implied warranty of suitability for residential construction existed in the subject transaction, pertinent to the lot itself.
3. Whether, when considering the above analysis, the trial court erred in its granting of summary judgment to the respondents, finding that no genuine issue of material fact existed in this case.

## II. Standard of Review

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving

party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by:

> (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06.

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Adver. & Publ. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the nonmoving party, and we must afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

## III.  Discussion

### A.  Duty to Disclose Soil Conditions

Ms. Winn asserted in her complaint that the "lack of disclosure of known and other possible defective soil conditions" was a breach of the duty of good faith and fair dealing. Relying on *Chattanooga Assocs., Ltd. P'ship v. Cherokee Warehouses, Inc.*, No. 03A01-9901-CH-00021, 1999 WL 907653 (Tenn. Ct. App. 1999), Ms. Winn asserts on appeal that Tennessee law imposes a duty of good faith and fair dealing which required Mr. Tucker to "disclose[] possible soil deficiencies in the [lot] at the time of sale, in some manner."

*Chattanooga Assocs.* involved a dispute between a landlord and tenant over a provision of their lease, which required tenant to pay for repairs and maintenance. *Chattanooga Assocs.*, 1999 WL 907653, at *1.  When the tenant refused to pay for repairs, the landlord filed suit to recover the cost of repairs.  As a defense to the action, tenant asserted that landlord had violated the implied covenant of good faith and fair dealing because it had failed to disclose to the tenant the landlord's "secret plan to construct extensive improvements." *Id.* at 6.  Judgment was entered in the landlord's favor, and tenant appealed. *Id.* at 2.  This Court discussed the covenant of good faith and fair dealing as follows:

> It is true that there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement. . . . What this duty consists of, however, depends upon the individual contract in each case.

*Id.* at 6.[1]  This Court upheld the trial court's ruling because "[t]he contract placed no requirement on the [landlord] to notify the [tenant] before undertaking any such 'maintenance or repairs.'" *Id.* at 7.  The Court also reasoned that if tenant had "wished such a requirement be placed on the [landlord], it could have negotiated that issue . . . and insisted that such a provision be included in the contract." *Id.*

In this case, there was no contract of sale.  Further, the deed contained no representations or warranties as to the condition of the lot, and there is no other document or statement by the defendants in the record in which any representations regarding the lot are made.  In the absence of any document or statement by the defendants from which we can

---

[1]  The Court also cited with approval *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 91 (Tenn. Ct. App.1988), in which the court stated that "[p]erformance of a contract according to its terms cannot be characterized as bad faith."

derive a duty of good faith and fair dealing, we cannot determine what, if any, actions defendants would have been required to take based on such a duty. To the extent that Ms. Winn's failure to disclose claim was based on the duty of good faith and fair dealing, summary judgment was proper.[2]

In her complaint, Ms. Winn also asserted that Mr. Tucker's "lack of disclosure of known and other possible defective soil conditions" was a breach of the Tennessee Real Estate Broker License Act and amounted to an unfair or deceptive practice under the Tennessee Consumer Protection Act. She has not discussed either Act on appeal, but we consider them in our analysis in order to fully resolve the issue raised herein.

In *Ganzevoort v. Russell*, the Tennessee Supreme Court held that a provision of the Tennessee Consumer Protection Act—Tenn. Code Ann. § 47-18-109(a)(1)[3]—requires brokers, agents, and other professional sellers of real property to "exercise good faith in disclosing to prospective purchasers material facts affecting the value of the property known to them and not known to or reasonably ascertainable by a prospective purchaser." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997). Brokers, agents, and other professional sellers are required to disclose material conditions because, the Court held, they "have knowledge and information superior both in quantity and quality to that of an average

---

[2] In her brief on appeal, Ms. Winn has also cited *Anderson v. Warren*, No. W2000-02649-COA-R3-CV, 2001 WL 1683810 (Tenn. Ct. App. 2001), in which this court held that there is a duty on each party to a contract to disclose all that party knows regarding the subject mater of the contract; *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789 (E.D. Tenn. 2009), an action in which plaintiffs—purchasers of log cabins—brought suit alleging, *inter alia*, breach of the implied warranty of good workmanship and the implied warranty of habitability and fitness; and *Tabenske v. Kendillon Constr. Co.*, 2008 WL 4604391 (Mich. App. 2008), in which plaintiff purchasers of a newly constructed home sued the builder and developer for, *inter alia*, breach of the duty to disclose known, latent conditions and fraudulent misrepresentation. Ms. Winn does not explain how these cases apply to the facts before this Court, and in any event, the cases cited are of little assistance in determining what, if any, duty the defendants breached under the facts in the record. In each case, the facts showed that the seller of a dwelling had misrepresented or concealed—either orally or in writing—known defects in the property. Ms. Winn did not allege that defendants had misrepresented or concealed known defects in the property in her complaint, and we decline to consider a claim based on misrepresentation or concealment because those claims were not presented to the trial court. Issues not raised in the trial court cannot be raised for the first time on appeal. *Sparks v. Metro. Gov't of Nashville & Davidson County*, 771 S.W.2d 430, 434 (Tenn. Ct. App. 1989).

[3] Tenn. Code Ann. § 47-18-109(a)(1) states:

Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

residential purchaser regarding factors and conditions that affect the value of the property they are offering for sale." *Id.* A similar duty of disclosure is required by the Real Estate Broker License Act, which requires that "[a] licensee who provides real estate services in a real estate transaction . . . [d]isclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge." Tenn. Code Ann. § 62-13-403(2). Both statutes require that the selling party have knowledge of either material conditions or adverse facts before the seller's duty to disclose is triggered.

We consider Ms. Winn's lack of disclosure claims under the Tennessee Consumer Protection Act and the Real Estate Broker License Act within the context of summary judgment. As required by *Hannan*, 270 S.W.3d at 8–9, we begin by examining the pleadings and exhibits filed by defendants in support of their motion, and we must determine whether defendants affirmatively negated an essential element of Ms. Winn's claims or showed that Ms. Winn would not be able to prove an essential element at trial. If defendants properly supported their motion, the burden of production will be shifted to Ms. Winn to raise a genuine issue of material fact.

In support of their motion for summary judgment, defendants filed a Statement of Undisputed Material Facts, which included the following:

> 7. Neither Welch Farms, LLC, nor Richard Tucker did anything to change or cause any sort of diversion of surface water in or around the Property during development Phase 3 of the surrounding sub-division.
> * * *
> 9. Richard Tucker is not aware of any soil deficiencies on Lot 125.

Paragraphs 7 and 9 included citations to Mr. Tucker's deposition, which was attached as an exhibit to the motion for summary judgment. The cited testimony was as follows:

> Q. Do you have any specialized knowledge about Lot 125 that you don't have about the other lots.
> A. I can't say that I do.
> Q. When you surveyed -- and I don't mean as far as the plat. But, I mean, when you encountered Phase 3 and you drove through it, did Lot 125 stand out to you in any manner whatsoever?
> A. No different than the other 39 lots that I think were there.
> Q. Did you in the back of your mind perhaps, even, when you looked at Lot 125, perhaps as you turned around in that area, ever say that lot might have a problem with water?
> A. No.

-7-

Q. Are you aware of any remedial measures that were done to Lot 125 as far as surface water?

A. None that I'm aware of.

Q. Ms. Winn in her deposition spoke about an old drain field or an old possible drain field. What is a drain field? I've heard that word tossed about.

A. I'm not sure that I can answer that question without a little more explanation of exactly what you're speaking of.

Q. And that sort of answers my question because I had never heard of it either. Is it possible that Lot 125 was sort of a sanctuary for the surface water around the other 39 lots or some land to the back of it, perhaps?

A. Not that I'm aware of. There's a drainage ditch that runs on one side of it. But that is the same ditch that the farm drained into prior to us starting Section 3.

Q. So you had not changed anything about Lot 125 as far as surface water all around it when you did Phase 3?

A. No.

The statement of facts filed in support of defendants' motion for summary judgment, as well as Mr. Tucker's deposition, attest that he was unaware of the drainage issue or any other special condition on the property. Because Ms. Winn's claims were premised on the Tennessee Consumer Protection Act and the Real Estate Broker License Act—both of which require that the seller have knowledge of the material condition or adverse fact—the materials filed by defendants affirmatively negated an essential element of each claim. The burden of production was then shifted to Ms. Winn to establish that a genuine issue of material fact existed as to Mr. Tucker's actual notice or knowledge of the condition of the property.

In opposition to the motion for summary judgment, Ms. Winn filed a Response to the Statement of Undisputed Material Facts, which stated in pertinent part:

7. AVERMENT: Neither Welch Farms, LLC, nor Richard Tucker did anything to change or cause any sort of diversion of surface water in or around the Property during development Phase 3 of the surrounding sub-division.
RESPONSE: The Petitioner is without sufficient knowledge or either Admit or Deny the truth of this statement.
* * *
9. AVERMENT: Richard Tucker is not aware of any soil deficiencies on Lot 125.

RESPONSE: Petitioner denies the truth of this statement. Richard Tucker is possessed wealthily of the suitability for construction of every area of the subject development.

Ms. Winn did not cite to any evidence or testimony in support of her responses. She did file her own Concise Statement of Additional and Disputed Material Facts, in which she asserted in pertinent part:

5. AVERMENT: Richard Tucker was well aware of the soil conditions in Savannah Chase, Phase III, at the time of the sale of Lot 125, Savannah Chase, to Jerry Winn.

In support of the above averment, Ms. Winn cited the following portions of Mr. Tucker's deposition:

Q. And have you and Mr. Mathews[4] ever done any projects such as Savannah Chase together?
A. We bought what we call the Welch Farm, that was the farm from Willard Welch, and we've developed several sections of subdivision plots on that property.
Q. And that was in what year?
A. We brought the Welch farm in maybe 1995.
* * *
Q. Tell me about how many homes you have built in the Sango area.
A. The number of homes?
Q. Yes, sir. Approximately. I'm not looking for exactly.
A. There's several hundred.
Q. 500?
A. I don't know whether I could say it was that many. It's probably in the 200 to 300 range.
* * *
Q. Did you study [the Welch Farm] very carefully or did you already know the land growing up here in Clarksville?
A. It adjoined property that I already owned that I was familiar with developing. And it was -- because it was contiguous to what I already had and our sections would extend onto it, that was why there was an interest.
* * *

_____

[4] "Mr. Mathews" refers to Gary Mathews, who Mr. Tucker stated was "the other member" of Welch Farm, LLC.

Q. Now, wasn't this area around Lot 125 swampy prior to your Phase 3 development?

A. Swampy?

Q. Yes, sir. Very wet.

A. The soil for the entire hog's back, as it was referred to, was a wet-natured soil.

Viewing the evidence presented in the light most favorable to Ms. Winn and affording her all reasonable inferences, we hold that she failed to demonstrate a genuine issue of material fact as to Mr. Tucker's knowledge of material or adverse conditions on the lot. Mr. Tucker's acknowledgment that the soil on the development was wet-natured does not, by itself, demonstrate that Mr. Tucker knew of a condition on the lot that was "not known to or reasonably ascertainable by" Ms. Winn, nor does it establish that wet-natured soil was an adverse fact or a condition that would have affected the value of the lot. Further, the other cited portions of Mr. Tucker's deposition include general statements about the Phase III development but do not establish that Mr. Tucker knew about the drainage issues—or any other material or adverse condition—specific to the lot. Ms. Winn's response to the motion for summary judgment was insufficient to raise a genuine issue of material fact, and the trial court's grant of summary judgment as to Ms. Winn's lack of disclosure claims was proper.

### B. Implied Warranty of Suitability for Residential Construction

Plaintiff urges this Court to adopt a cause of action for breach of "implied warranty of suitability for residential construction."

The implied warranty applicable to the sale of realty was before our Supreme Court in the case of *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888 (Tenn. 1980).[5] In that case, plaintiffs had purchased a home and lot on sloping terrain from the defendant, a home-building company. During the year after the purchase, heavy rainfall precipitated at least two substantial shifts of soil behind the home, and plaintiffs incurred considerable expenses for repair work. They sued the builder for what the Supreme Court characterized as the "newly-emergent theory of negligent misrepresentation," strict liability, and implied warranty. The defense of contributory negligence had not been pled but was included in the trial court's charge to the jury, which found both parties negligent and awarded no damages. Plaintiffs moved for a new trial and, in response, defendants moved to amend their answer pursuant to Rule 15.02, Tenn. R. Civ. P.; on appeal, the Court of Appeals reversed and remanded for a new trial. On further appeal, the Supreme Court affirmed the trial court's grant of the Rule

---

[5] The implied warranty was variously denominated as "implied warranty", "implied warranty of fitness for a particular purpose", and "implied warranty of habitability."

15.02 motion. Discussion of implied warranty in the sale of realty arose through a petition for rehearing. As in this case, the plaintiff asked the Court to adopt the implied warranty, but the Court acknowledged that Tennessee is not among those jurisdictions which recognize an implied warranty in the sale of realty, and the Court declined to adopt the implied warranty theory urged by the plaintiff. *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 892 (Tenn. 1980).

The property at issue in this case was unimproved and, as noted earlier, there is no contract or other writing or oral statements wherein the defendants represented the suitability of the property for construction of the house. In light of the Supreme Court's reluctance to adopt the implied warranty which would be applicable to the sale of improved property, as urged in *Zack Cheek Builders*, and on the record presented in the case before us, we do not agree that the warranty urged by Ms. Winn is appropriate.

## IV. Conclusion

For the foregoing reasons, the judgment of the Chancery Court for Montgomery County is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE